SWIFT v. RICHARDSON SPORTS, LTD.

[169 N.C. App. 529 (2005)]

MICHAEL SWIFT, Employee, Plaintiff v. RICHARDSON SPORTS, LTD. d/b/a CAROLINA PANTHERS, Employer and LEGION .INSURANCE COMPANY (Cameron M. Harris & Company, Adjusting Service), Carriers, Defendants

No. COA04-302

(Filed 5 April 2005)

**1. Workers' Compensation— compensable injury—professional football player**

The Industrial Commission did not err by finding that a professional football player sustained a compensable injury by accident arising out of and in the course of his employment where his leg was broken and ankle tendons torn when other players fell on the back of his leg during a game. There was evidence to support the Commission's findings that the injury was unusual.

**2. Workers' Compensation— disability—professional football player—reason for being released from team—personal knowledge**

The trial court did not err by allowing plaintiff, a football player, to testify about the reason for his termination from a team. Plaintiff offered personal knowledge about why he was released and his testimony was not hearsay.

**3. Workers' Compensation— disability—injured professional football player—return with another team—eventual release**

The Industrial Commission did not err in a workers' compensation case by awarding compensation to a professional football player who was injured while playing with defendant, then returned to play with another team. While plaintiff did try out for and make the other team, he was released from that team because of injuries suffered with defendant.

**4. Workers' Compensation— disability—professional football player—dollar-for-dollar credits**

The Industrial Commission did not abuse its discretion in a workers' compensation disability case by awarding a time credit rather than a dollar-for-dollar credit for payments made by defendants to plaintiff, a professional football player, after he was injured. Dollar-for-dollar credits are precluded by North Carolina law.

SWIFT v. RICHARDSON SPORTS, LTD.

[169 N.C. App. 529 (2005)]

**5. Workers' Compensation— attorney fees—findings**

An award of attorney fees in a workers' compensation case was remanded for additional findings of fact and conclusions of law on attorney fees and a statement of the specific statute relied upon in making the award.

Appeal by defendants from opinion and award entered 10 October 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 15 November 2004.

*R. James Lore for plaintiff appellee.*

*Hedrick, Eatman, Gardner, & Kincheloe, L.L.P., by Hatcher Kincheloe and Shannon P. Herndon, for defendant appellants.*

McCULLOUGH, Judge.

Defendants appeal from the opinion and award of the North Carolina Industrial Commission. Plaintiff Michael Swift was born on 28 February 1974. He graduated from high school and attended college at Austin Peay State, but did not graduate. Although he was not drafted as a professional football player, plaintiff made the San Diego Chargers as a free agent. Plaintiff worked primarily on special teams, but also played cornerback on defense. After playing two seasons with the Chargers, plaintiff signed with the Carolina Panthers and played the same positions. Plaintiff was a member of the Panthers' team from 1998-1999 and 1999-2000.

On or about 27 July 1999, plaintiff agreed to play for the Panthers in exchange for $325,000.00 which was paid in seventeen equal installments. Although the regular season consists of sixteen games, the season lasts seventeen weeks because every team receives a "bye," or one week in which there is no game.

During the fifteenth game of the regular season, plaintiff lined up on the end of the line. Plaintiff intended to go around the opposing team's players and block an extra point attempt. However, the opposing team bobbled the ball, and the play broke down. When he attempted to get the ball, an opponent knocked plaintiff on the ground, and one or two players fell on the back of plaintiff's leg. This resulted in a broken right fibula and severe tearing in the tendons of his ankle. At the time of the injury, plaintiff was taking all reasonable measures to protect himself from injury given the nature of the game.

SWIFT v. RICHARDSON SPORTS, LTD.

[169 N.C. App. 529 (2005)]

On 27 December 1999, the Panthers' team doctor performed surgery and inserted hardware to repair plaintiff's leg and ankle. Plaintiff returned to Tennessee where he underwent physical therapy. The Panthers decided not to renew plaintiff's contract for the 1999-2000 season because plaintiff was still on crutches and was undergoing physical therapy for his ankle.

On or about 9 March 2000, the Panthers' team physician removed some of the hardware from plaintiff's leg. Afterwards, plaintiff returned to Memphis to continue his physical therapy.

Although his ankle had not fully recovered, plaintiff tried out for another team, the Jacksonville Jaguars. In spite of having continued symptoms, plaintiff made the team. However, the Jaguars released plaintiff after the first game because plaintiff's ankle injury impaired his speed and mobility.

Although several other teams asked plaintiff to participate in try-outs, plaintiff was unable to make a team because of the injury he sustained while working for the Panthers. Despite plaintiff's lengthy period of rehabilitation, the injury was career-ending.

Because he could no longer pursue a career in professional football, plaintiff worked a number of other jobs. From late November of 2000 until January of 2001, plaintiff worked as an analyst for Protein Technologies making twelve dollars per hour. From April of 2001 through October of 2002, plaintiff worked for Uniform People as a sales representative. There, he earned an annual salary of $35,000.00. Finally, plaintiff became self-employed in October of 2002. At that time, his anticipated income from selling used computer equipment was $40,000.00 per year. All of these jobs reflected plaintiff's attempt at reaching his wage earning capacity outside of the NFL.

In the NFL, a player's salary is based on his contract. In this case, the contract called for $325,000.00 to be paid in seventeen equal payments immediately after each of the sixteen games plus the bye-week during the seventeen-week season. Subsequent to 26 December 1999, the date of the injury, plaintiff had played in the fifteenth game of the season and had earned that check by the time he was injured.

The next week, plaintiff received his sixteenth and final check after the Panthers played the last game of the 1999-2000 season. Plaintiff received this $19,118.00 check under the injury protection provisions of paragraph 9 of the standard NFL Player Contract. Payments made under this disability provision are funded exclusively

from the player's side, as opposed to the employer's side of the divided league revenue under the Collective Bargaining Agreement.

On or about 31 December 2001, plaintiff received a $30,000.00 check for severance pay from the Panthers. This amount was based on the Collective Bargaining Agreement and the number of years that plaintiff played in the NFL. Although plaintiff received this check after the injury, he had earned the entire amount before the injury because in the NFL, a player accrues a year of service once he plays in the third game of the season. During the 1999-2000 season, the third game had occurred prior to plaintiff's injury on 26 December 1999.

While playing for the Jacksonville Jaguars in September 2000, plaintiff received $22,647.00, which was 1/17 of his yearly contract. The payment was for playing in one regular season game; defendant received nothing thereafter. This amount reflects the one week that plaintiff had an earning capacity equal to or greater than he had while playing with the Panthers. The Jaguars made a number of other payments for things like travel expenses and training camp. These payments would still yield an entitlement that exceeds the maximum compensation rate of $560.00 that was in effect in 1999.

Plaintiff's average weekly wage is $6,476.90. This wage is calculated by dividing the yearly contract plus all other payments the Panthers paid for the season in which the injury occurred.

Based on those facts, the Full Commission made the following conclusions of law. First, plaintiff sustained a compensable injury by accident as a result of a compensable event arising out of and in the course of his employment with defendants on 26 December 1999. Second, plaintiff is entitled to partial disability compensation at the maximum rate of $560.00 per week (the rate that was in effect in 2000) and past and future medical treatment. Finally, defendants were permitted to deduct one weekly compensation payment at the maximum applicable rate of $560.00 from the 300 weeks of compensation otherwise due.

Based upon its findings of fact and conclusions of law, the Full Commission awarded plaintiff compensation at the rate of $560.00 per week for a period of 299 weeks with the accrued relating back to 27 December 1999. This amount was to be paid in one lump sum with the balance to be paid over the remainder of the 299-week period so long as plaintiff's yearly earnings were sufficient

SWIFT v. RICHARDSON SPORTS, LTD.

[169 N.C. App. 529 (2005)]

to yield the maximum compensation rate of $560.00 per week. Additionally, defendants had to pay a reasonable attorney fee of 25%, past and future medical expenses, and the costs of the appeal. Defendants appeal.

On appeal, defendants argue that the Full Commission erred by (1) finding that plaintiff sustained a compensable injury by accident arising out of and in the course of his employment on 26 December 1999, (2) allowing plaintiff to testify about the reason for his termination from the Jacksonville Jaguars, (3) awarding plaintiff 299 weeks of benefits, (4) incorrectly calculating the credit to which defendants were entitled, and (5) awarding attorney fees to plaintiff. We disagree and affirm the opinion and award of the Full Commission.

I. Compensable Injury

[1] Defendants contend that the Full Commission erred in finding that plaintiff sustained a compensable injury by accident arising out of and in the course of his employment on 26 December 1999.

The Workers' Compensation Act extends coverage only to an "injury by accident arising out of and in the course of the employment[.]" N.C. Gen. Stat. § 97-2(6) (2003). Injury and accident are separate concepts, and there must be an accident which produces the injury before an employee can be awarded compensation. *Jackson v. Fayetteville Area Sys. of Transp.*, 88 N.C. App. 123, 126-27, 362 S.E.2d 569, 571 (1987). Our Supreme Court has explained:

> An accident, as the word is used in the Workmen's Compensation Act, has been defined as "an unlooked for and untoward event which is not expected or designed by the injured employee." "A result produced by a fortuitous cause." "An unexpected or unforeseen event." "An unexpected, unusual or undesigned occurrence."

*Edwards v. Publishing Co.*, 227 N.C. 184, 186, 41 S.E.2d 592, 593 (1947) (citations omitted). "[U]nusualness and unexpectedness are its essence." *Smith v. Creamery Co.*, 217 N.C. 468, 472, 8 S.E.2d 231, 233 (1940). "To justify an award of compensation, the injury must involve more than the carrying on of usual and customary duties in the usual way." *Davis v. Raleigh Rental Center*, 58 N.C. App. 113, 116, 292 S.E.2d 763, 766 (1982). "The issue of whether a particular accident arises out of and in the course of employment is a mixed question of fact and law, and this Court's review is limited on appeal to the question of whether the findings and conclusions are supported by com-

petent evidence." *Hoyle v. Isenhour Brick and Tile Co.*, 306 N.C. 248, 251, 293 S.E.2d 196, 198, *disc. review denied*, 306 N.C. 565 (1982).

In its findings of fact, the Full Commission described how plaintiff sustained his injury:

> 8. In the 15th game of the 16-game regular season, while playing on special teams in a game against the Pittsburgh Steelers in Pittsburgh, Pennsylvania, plaintiff was lined up on the end of the line to attempt to get around the opposing team's players and block an extra point attempt. On that particular play, the opposing team bobbled the ball and the play broke down. In an attempt to get to the ball, Swift was knocked to the ground and at least one other player, and possibly two, fell on the back of his leg not only breaking his right fibula but also severely tearing the tendons in his ankle.

There is competent evidence in the record which supports this finding. Plaintiff testified that he sustained an injury while playing in the fifteenth game of the season against the Pittsburgh Steelers. Additionally, plaintiff's description of the incident is consistent with the Full Commission's finding. Plaintiff indicated that when he attempted to block an extra point, the opposing team bobbled the ball. When the play broke down, one or more players fell on the back of plaintiff's leg resulting in a broken right fibula and torn tendons in the ankle.

In determining that plaintiff sustained a compensable injury by accident, the Full Commission made the following important finding of fact:

> 9. It was unexpected and unusual for a player to fall on Swift in this way so as to break his fibula and cause such a tear in his ankle tendon. At the time of injury, Swift was taking all reasonable measures to protect himself from injury given the nature of the game. At the same time, Swift was required to do what he was doing when injured and had no choice but to do it as best he could notwithstanding the risk of injury.

Once again, there was competent evidence in the record to support this finding. First, the injury was unusual in that Swift attempted to block numerous extra point attempts without sustaining a broken leg and torn tendons in his ankle. Second, it was unexpected that one or more players would fall on the back of plaintiff's leg causing a career-ending injury. Finally, Dr. J. Leonard Goldner testified that

such an injury requires a force of 3000 pounds per square inch to occur. Because there is competent evidence to support the Full Commissions' findings of fact and these findings support its conclusion of law that plaintiff sustained a compensable injury by accident, we overrule this assignment of error.

## II. Hearsay Testimony

[2] Defendants argue that the Full Commission erred by allowing plaintiff to testify about the reason for his termination from the Jacksonville Jaguars. Defendants claim that the reason for the termination was outside of plaintiff's firsthand knowledge and was therefore hearsay. This argument is unpersuasive.

Pursuant to N.C. Gen. Stat. § 8C-1, Rule 801(c) (2003) (emphasis added), hearsay "is a statement, *other than one made by the declarant while testifying at the trial or hearing*, offered in evidence to prove the truth of the matter asserted." Here, plaintiff's attorney asked plaintiff why he was released from the Panthers. In response, plaintiff offered personal knowledge as to why he was released. He stated that he could not "perform as needed on the field." This statement does not meet the definition of hearsay because it occurred while plaintiff was testifying at the hearing. For these reasons, we overrule this assignment of error.

## III. Amount Paid

[3] Defendants argue that the Full Commission erred by awarding plaintiff 299 weeks of benefits. Before addressing this contention, we recognize our limited standard of review in workers' compensation cases. In short, we must determine "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). The Full Commission is the "sole judge of the weight and credibility of the evidence[.]" *Id.* at 116, 530 S.E.2d at 553. An appellate court reviewing a workers' compensation claim "does not have the right to weigh the evidence and decide the issue on the basis of its weight." *Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). "The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Id.* at 434, 144 S.E.2d at 274. If there is any evidence at all, taken in the light most favorable to plaintiff to support it, the finding of fact stands, even if there is evidence going the other way. *Adams v. AVX*

*Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). With these principles in mind, we turn to consider defendants' arguments regarding the amount paid.

Defendants claim that plaintiff should not have received 299 weeks of benefits because he returned to football with the Jacksonville Jaguars. The Full Commission did make a finding of fact addressing this issue. In finding of fact 13, the Full Commission stated:

> 13. Although his leg and ankle had not fully recovered, Swift, who had planned on making a career out of working in the NFL as a professional football player, tried out for another professional football team, the Jacksonville Jaguars. Although he had continued symptoms with his ankle, he made the team. After his first game with the Jaguars, on September 5, 2000 plaintiff was released from the team because of limitations of speed and ability to maneuver as a result of the impairment from the ankle injury sustained while working with the Carolina Panthers. Swift's compensable work-related limitations made him more likely to be dismissed from the team relative to his teammates for reasons of relative performance.

The record indicates that plaintiff did try out and make the Jacksonville Jaguars' football team. The record also reveals that plaintiff was released from the Jaguars on or around 5 September 2000. Plaintiff's own testimony, which we have already determined to be based on his own personal knowledge, tended to show that plaintiff was released because of limitations from the injury with the Panthers. Therefore, competent evidence in the record supports this finding of fact. We overrule this assignment of error.

### IV. Award of a Credit

[4] Defendants disagree with the Full Commission's award of a credit for payments defendants made to plaintiff. Under N.C. Gen. Stat. § 97-42 (2003)

> [p]ayments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this Article were not due and payable when made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation. Provided, that in the case of disability such deductions shall be made by shortening the period during which compensation must be paid, and not by

reducing the amount of the weekly payment. Unless otherwise provided by the plan, when payments are made to an injured employee pursuant to an employer-funded salary continuation, disability or other income replacement plan, the deduction shall be calculated from payments made by the employer in each week during which compensation was due and payable, without any carry-forward or carry-back of credit for amounts paid in excess of the compensation rate in any given week.

N.C. Gen. Stat. § 97-42 is the only statutory authority which allows an employer in North Carolina to receive a credit from workers' compensation benefits that are due to an injured employee. *Effingham v. Kroger Co.*, 149 N.C. App. 105, 119, 561 S.E.2d 287, 296 (2002). "The decision of whether to grant a credit is within the sound discretion of the Commission." *Shockley v. Cairn Studios, Ltd.*, 149 N.C. App. 961, 966, 563 S.E.2d 207, 211 (2002), *appeal dismissed, disc. review denied,* 356 N.C. 678, 577 S.E.2d 887, 888 (2003). Thus, the Commission's decision to grant or deny a credit to the employer will not be reversed unless there is an abuse of discretion. *Id.*

Defendants argue that they are entitled to a dollar-for-dollar credit for amounts they paid after plaintiff's injury. First, they contend that this Court allowed a dollar-for-dollar credit in *Larramore v. Richardson Sports Ltd. Partners*, 141 N.C. App. 250, 540 S.E.2d 768 (2000), *aff'd per curiam,* 353 N.C. 520, 546 S.E.2d 87 (2001). Second, they claim that they are entitled to such a credit based on Paragraph 10 of the NFL Player Contract.

Our Court considered this exact issue in *Smith v. Richardson Sports, Ltd.*, 168 N.C. App. 410, 416, 608 S.E.2d 342 (2005) and rejected both of these arguments. There, the Court explained that *Larramore* did not entitle an employer to a dollar-for-dollar credit for amounts an employer paid to an employee after his injury. *Id.* Instead, the Court determined that N.C. Gen. Stat. § 97-42 governed this issue and under that statute, any credit the employer receives is limited to the shortening of the period in which compensation is paid, not by reducing the amount of the weekly payment. *Id.* Finally, the Court rejected the notion that Paragraph 10 of the NFL Player Contract would allow a dollar-for-dollar credit because N.C. Gen. Stat. § 97-6 (2003) states that no contract or agreement can relieve an employer, in whole or in part, from his obligation to pay workers' compensation. *Id.* at 417-18, 608 S.E.2d at 348. Since North Carolina law precludes the allowance of a dollar-for-dollar credit, we cannot allow such a recovery in the present case.

However, we believe that the Full Commission was correct in the credit it did allow defendants to receive. In conclusion of law 4, the Full Commission stated:

> 4. Defendants are entitled to deduct one weekly compensation payment at the maximum applicable rate of $560.00 weekly from the 300 weeks of compensation otherwise due and owing pursuant to N.C. Gen. Stat. § 97-30.

In short, defendants did receive a week's deduction for time, not dollars. The Full Commission required defendants to pay plaintiff for 299 weeks, rather than 300 weeks, because plaintiff returned to football for one week and exhibited earning capacity comparable to his average weekly wage. This award complies with the statutory mandate of N.C. Gen. Stat. § 97-42. Furthermore, defendants have failed to show that they are entitled to an additional one-week credit. Although plaintiff sustained his injury in the 15th game and received payment for the 16th game in which he did not play, the Commission noted that this money came exclusively from the player's side of the divided league revenue. Competent evidence in the record supports this finding since Richard Berthelson, counsel for the NFL Player's Association, testified that the funding in question came from the players' side of the revenue. Although we are troubled by the fact that the Commission awarded a 14-week credit in the *Smith* case and denied a one-week credit here, we recognize that such credits are a matter of discretion under N.C. Gen. Stat. § 97-42. While there seems to be little significant difference between the cases, we cannot conclude that the Full Commission necessarily abused its discretion in making this determination. We overrule this assignment of error.

### V. Attorney Fees

[5] Defendants object to the award of attorney fees. In their briefs, both parties contend that the Full Commission made the award pursuant to N.C. Gen. Stat. § 97-88.1 (2003). Under the statute, before making an award, the Commission must determine that a hearing "has been brought, prosecuted, or defended without reasonable ground." However, the actual opinion and award sheds no light whatsoever upon this question. It contains no findings of fact or conclusions of law pertaining to attorney fees. The only mention of attorney fees is in paragraph 2 of the award section of the order which states:

> A reasonable attorney fee in the amount of twenty-five percent (25%) of the compensation due plaintiff is approved and awarded

IN THE COURT OF APPEALS 539

to plaintiff's counsel as attorney's fees. This amount shall be paid as a part of the cost of this action and not deducted from Plaintiff's compensation. All sums that have accrued shall be paid in a lump sum.

We respectfully remand this issue to the Full Commission for the entry of additional findings of fact and conclusions of law on the issue of attorney fees. The Full Commission should also specifically state the statute it relied upon in making the award and should make the necessary findings of fact and conclusions of law supporting the award.

After careful consideration, the opinion and award is

Affirmed in part, remanded in part.

Chief Judge MARTIN and Judge STEELMAN concur.