WELLINGTON CRUTCHFIELD, Employee, Plaintiff-Appellant,
v.
CAROLINA FOOTBALL ENTERPRISES, INC., Uninsured-Employer, and TRAVELERS INSURANCE COMPANY, Carrier, Defendants-Appellees.
No. COA07-748
Court of Appeals of North Carolina.
Filed April 1, 2008
This case not for publication
Scudder & Hedrick, by John A. Hedrick, for plaintiff-appellant.
Wilson & Ratledge, PLLC, by Kristine L. Prati, for defendant-appellee, Carolina Football Enterprises.
Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Thomas M. Morrow, for defendant-appellee, Travelers Insurance Company.
JACKSON, Judge.
Wellington Crutchfield ("plaintiff") appeals from an Opinion and Award of the Full Commission of the North Carolina Industrial Commission ("Full Commission") filed on 22 March 2007. For the following reasons, we affirm in part, vacate in part, and remand. Plaintiff attended North Carolina Central University on an athletic scholarship, where he played football as a defensive back. After graduating, plaintiff played professional football for the Detroit Lions, St. Louis Rams, Dallas Cowboys, Philadelphia Eagles, and Kansas City Chiefs in the National Football League, the Frankfurt Galaxy in the National Football League Europe, the Toronto Argonauts in the Canadian Football League, and the Georgia Force in the Arena Football League. In 2003, plaintiff began playing for the Carolina Cobras ("the Cobras"), an arena football team owned by Carolina Football Enterprises ("defendant-employer") and insured by Travelers Insurance Company ("defendant-insurer") (collectively, "defendants").
When plaintiff joined the Cobras, he entered into a contract to earn $1,500.00 per week, with a per diem allowance of $75.00 to $100.00 per day while traveling with the team. Plaintiff also was provided a furnished apartment in Charlotte, North Carolina, for which defendant-employer paid plaintiff's utility expenses, including cable television. During the football off-season, plaintiff spent his time training for the next season, and he did not obtain or seek a part-time job, full-time job, or other supplemental income.
On 14 February 2003, plaintiff was playing for the Cobras as a defensive back when an opposing player blind-sided him and struck his right knee. As a result, plaintiff sustained a lateral meniscus tear requiring surgery, which was performed on 6 March 2003. Plaintiff returned to playing for the Cobras after the surgery, but during a game on 11 April 2003, plaintiff was injured when an opposing player's helmet struck plaintiff's previously injured knee.
On 11 April 2003, when plaintiff experienced the second incident with his knee, defendant-employer was without workers' compensation insurance as required by North Carolina General Statutes, section 97-93. Nevertheless, defendant-employer's agent, Source One Group, compensated plaintiff for total disability pursuant to North Carolina General Statutes, sections 97-18(b) and 97-29.
Following his 11 April 2003 injury, plaintiff did not play in any of the remaining games in the 2003 season. The Cobras' team physician, Dr. Jerry L. Barron ("Dr. Barron"), had been treating plaintiff for the 14 February 2003 incident and continued to do so after plaintiff's second incident. Plaintiff initially attended physical therapy four to five days per week, but an MRI ordered by Dr. Barron revealed the possibility that plaintiff had a recurrent lateral meniscus tear. Dr. Barron conducted another surgery on 8 September 2003, which confirmed that plaintiff had a radial tear of the lateral meniscus and a significant partial injury to his ACL. On 8 December 2003, Dr. Barron conducted a third surgery, during which he repaired both the ACL tear and a lateral tibia plateau flap tear.
Between 16 May 2003 and 2 January 2004, plaintiff did not work for or receive payment from any employer. On 2 January 2004, plaintiff was hired by Shaw University as an assistant football coach. On 7 March 2005, plaintiff resigned from this position to begin work as a recruiter for Tech Systems on 14 March 2005.
On 15 August 2003, plaintiff notified defendant-employer that he had sustained a torn right meniscus during the football game on 14 February 2003. On 2 August 2004, plaintiff requested a hearing, seeking an award of temporary total disability compensation, temporary partial disability compensation, and medical compensation.
On 22 December 2005, Deputy Commissioner George R. Hall, III ("Deputy Commissioner Hall") entered an Opinion and Award awarding workers' compensation benefits to plaintiff. Defendants gave notice of appeal to the Full Commission, and on 5 January 2007, the Full Commission filed an Opinion and Award affirming the Opinion and Award of Deputy Commissioner Hall with modifications.
On 16 January 2007, plaintiff filed a motion for reconsideration on the grounds that the Full Commission incorrectly calculated plaintiff's average weekly wages. On 22 January 2007, plaintiff submitted a proposed opinion and award that included a finding concerning permanent partial disability. By order entered 22 March 2007, Commissioner Pamela T. Young granted plaintiff's motion for reconsideration solely as to the issue of permanent partial disability. On the same date, the Full Commission filed an Amended Opinion and Award. Thereafter, plaintiff gave timely notice of appeal.
When this Court reviews a decision of the Full Commission, its inquiry is limited to whether there is competent evidence to support the Full Commission's findings of fact, and whether those findings of fact support the Full Commission's conclusions of law. See Bond v. Foster Masonry, Inc., 139 N.C. App. 123, 126.27, 532 S.E.2d 583, 585 (2000). We review de novo the Full Commission's conclusions of law. See id. at 127, 532 S.E.2d at 585.
On appeal, plaintiff first contends that the Full Commission erroneously calculated his average weekly wages by dividing his wages and allowances by fifty-two weeks rather than the number of weeks in his contract. We disagree.
North Carolina General Statutes, section 97-2(5) provides five separate methods by which the Industrial Commission may calculate an employee's "average weekly wages." First, "average weekly wages" may be calculated as the employee's earnings "in the employment in which he was working at the time of the injury during the period of [fifty-two] weeks immediately preceding the date of the injury . . . divided by [fifty-two]." N.C. Gen. Stat. § 97-2(5) (2005). "[I]f the injured employee lost more than seven consecutive calendar days at one or more times during such [fifty-two-week] period, although not in the same week," then an alternate method of calculating wages may be used, by which the employee's earnings for the remainder of the fifty-two-week period "shall be divided by the number of weeks remaining after the time so lost has been deducted." Id. A third method of calculating wages provides that when the employee's employment prior to the injury lasted fewer than fifty-two weeks, "the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained." Id. Fourth, when it is impractical to compute the employee's average weekly wages by one of the first three methods, either because of the limited duration or casual nature of the employment, the Industrial Commission should consider the average weekly amount during the fifty-two weeks preceding the injury that "was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community." Id. Finally, when, "for exceptional reasons," the results produced by the four other methods "would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." Id. Our Supreme Court has held that section 97-2(5) "establish[es] a clear order of preference." See Hensley v. Caswell Action Comm., Inc., 296 N.C. 527, 533, 251 S.E.2d 399, 402 (1979). Regardless of the method employed, "the primary intent of this statute is that results are reached which are fair and just to both parties." McAninch v. Buncombe County Sch., 347 N.C. 126, 130, 489 S.E.2d 375, 378 (1997).
In the case sub judice, the Full Commission found that calculating plaintiff's average weekly wages under any of the first four methods of section 97-2(5) would produce unfair and unjust results to the parties. We agree. Plaintiff worked fewer than fifty-two weeks prior to his compensable injuries; therefore, his weekly wages cannot be calculated under the first or second methods of the statute. We also agree with the Full Commission's finding that due to the nature of professional football contracts and how they are negotiated, fair and just results cannot be produced from the third method of payment in the statute. Moreover, since no evidence was presented as to the average weekly wages of an employee of the same grade and character as plaintiff in the same locality or community, plaintiff's average weekly wages cannot be calculated by the fourth method provided in the statute. Therefore, to produce just results, the Full Commission utilized the fifth calculation method listed in section 97-2(5), which allows for a recovery that approximates the amount which the injured employee would be earning were it not for the injury. See N.C. Gen. Stat. § 97-2(5) (2005).
In accordance with this fifth method of calculation, the Full Commission determined that plaintiff's average weekly wages should be calculated based upon the amount plaintiff would have earned had he continued to play football for defendant-employer. Therefore, the Full Commission calculated plaintiff's average weekly wages by adding his yearly salary plus his per diem allowance, totaling $28,512.00, and dividing this amount by fifty-two weeks, yielding an average weekly wages of $548.31.
Plaintiff, however, contends that the Full Commission should have divided his yearly salary by the length of his employment contract. We disagree. Competent evidence demonstrates that plaintiff's salary with defendant-employer encompassed a full year's worth of performance. Plaintiff engaged in pre season practice as early as January 2003. During the off-season, plaintiff trained for the next season and did not hold or seek any other employment. Moreover, plaintiff admitted that he would live off his contract salary throughout the calendar year. Additionally, if plaintiff's average weekly wages is computed as plaintiff suggests, it would equate to a yearly salary of over $90,000.00. Compared to his contract salary, including per diem allowances, of $28,512.00, such a result would constitute a windfall for plaintiff. Finally, the Full Commission correctly noted in conclusion of law number 2 that "[t]his is the approach previously applied by the Full Commission for professional football players," and that this Court affirmed the Full Commission's Opinion and Award in that case. See Larramore v. Richardson Sports Ltd. Partners, 141 N.C. App. 250, 256.57, 540 S.E.2d 768, 771.72 (2000), aff'd, 353 N.C. 520, 546 S.E.2d 87 (2001) (per curiam). Therefore, we agree that there was competent evidence to support the Full Commission's findings of fact and that those findings of fact support the Full Commission's conclusions of law on this issue. Accordingly, plaintiff's assignment of error is overruled.
Plaintiff next contends that the Full Commission erred by failing to award attorney's fees pursuant to section 97-88.1. The Full Commission's award reads, in pertinent part:
1. Subject to the attorney's fee approved below, defendants shall pay plaintiff temporary total disability compensation at the rate of $365.72 per week from May 17, 2003 through January 1, 2004. . . .
2. Subject to the attorney's fee approved below, defendants shall pay plaintiff permanent partial disability compensation at the rate of $365.72 per week for 40 weeks for the 20% permanent partial disability sustained to his right knee.
. . . .
5. A reasonable attorney's fee of 25% of the compensation benefits due plaintiff in Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel.
6. Defendants shall pay a sanction of $500.00 for unreasonably defending this claim.
. . . .
This "award is not a model of clarity." Cody v. Snider Lumber Co., 328 N.C. 67, 71, 399 S.E.2d 104, 106 (1991). Therefore, we must remand for clarification of the award (or awards) of attorney's fees.
"As a general rule, each side bears the cost of its own attorney's fees, and attorney's fees may only be awarded when expressly authorized by statute." Troutman v. White & Simpson, Inc., 121 N.C. App. 48, 52, 464 S.E.2d 481, 485 (1995), disc. rev. denied, 343 N.C. 516, 472 S.E.2d 26 (1996). Here, the Full Commission could have awarded attorney's fees pursuant to North Carolina General Statutes, sections 97-88 or 97-88.1.
Section 97-88 provides:
If the Industrial Commission at a hearing on review or any court before which any proceedings are brought on appeal under this Article, shall find that such hearing or proceedings were brought by the insurer and the Commission or court by its decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, the Commission or court may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as a part of the bill of costs.
N.C. Gen. Stat. § 97-88 (2005). The Industrial Commission's ruling pursuant to section 97-88 is reviewed for an abuse of discretion.See Cox v. City of Winston-Salem, 171 N.C. App. 112, 119, 613 S.E.2d 746, 750 (2005).
Section 97-88.1 provides that "[i]f the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them." N.C. Gen. Stat. § 97-88.1 (2005). As this Court has explained, "[t]he purpose of this section is to prevent ' stubborn, unfounded litigiousness which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees.'" Troutman, 121 N.C. App. at 54, 464 S.E.2d at 485 (quoting Beam v. Floyd's Creek Baptist Church, 99 N.C. App. 767, 768, 394 S.E.2d 191, 192 (1990)). When reviewing an award entered pursuant to section 97-88.1, "[t]he decision of whether to make such an award, and the amount of the award, . . . will not be disturbed absent an abuse of discretion." Id. at 54.55, 464 S.E.2d at 486. First, neither paragraph 5  awarding attorney's fees of twenty-five percent of the compensation benefits  nor paragraph 6  sanctioning defendants $500.00  includes a reference to the statutory basis for the respective awards. In Swift v. Richardson Sports, Ltd., 173 N.C. App. 134, 620 S.E.2d 533 (2005), disc. rev. denied, 360 N.C. 545, 635 S.E.2d 61 (2006), we instructed the Industrial Commission to "specifically state the statute [ either section 97-88 or section 97-88.1  ] it relied upon in making the award and . . . [to] make the necessary findings of fact and conclusions of law supporting the award." Swift, 173 N.C. App. at 143, 620 S.E.2d at 539. On remand, the Full Commission should state the statutory basis  specifically, either section 97-88 or 97-88.1  for paragraphs 5 and 6 of the award.
Next, in both its findings of fact and conclusions of law, the Full Commission stated that "defendant-employer defended this claim without reasonable grounds," specifically citing section 97-88.1. However, in the sixth paragraph of the award, the Full Commission ordered that "[d]efendants shall pay a sanction of $500.00 for unreasonably defending this claim." Assuming paragraph 6 was based upon section 97-88.1, we note that section 97-88.1 only authorizes the Industrial Commission to assess costs "upon the party who . . . brought or defended" a particular hearing without reasonable grounds. N.C. Gen. Stat. § 97-88.1 (2005) (emphasis added).
Additionally, section 97-88.1 authorizes the Industrial Commission to "assess the whole cost of the proceedings including reasonable fees," id., and the amount awarded pursuant to section 97-88.1 is in the discretion of the Industrial Commission. See Troutman, 121 N.C. App. at 54.55, 464 S.E.2d at 485. This Court has indicated that the amount of attorney's fees awarded may be based upon, inter alia, a percentage of the compensation awarded to the employee or a percentage of the total award. See, e.g., Palmer v. Jackson, 157 N.C. App. 625, 637, 579 S.E.2d 901, 909 (2003) (noting that the Industrial Commission awarded attorney's fees of twenty-five percent of the compensation awarded, and, interpreting section 97-90(c), holding that a trial court can order a defendant-carrier to further pay attorney's fees in "an amount based upon a percentage (be it 1%, 5%, 10% or so on) of the . . . medical compensation"), disc. rev. improvidently allowed, 358 N.C. 373, 595 S.E.2d 145 (2004) (per curiam); Chavis v. Thetford Prop. Mgmt., Inc., 155 N.C. App. 769, 771, 573 S.E.2d 920, 921 (2003) (upholding an award of twenty-five percent of all compensation paid to the employee as reasonable attorney's fees pursuant to section 97-88.1); Kisiah v. W.R. Kisiah Plumbing, Inc., 124 N.C. App. 72, 83, 476 S.E.2d 434, 440 (1996) (holding that the Full Commission erred in determining that no basis existed upon which to penalize the defendant because the Full Commission could have looked to section 97-18(e), which provides a penalty of ten percent of any unpaid installments of compensation), disc. rev. denied, 345 N.C. 343, 483 S.E.2d 169 (1997); Church v. Baxter Travenol Labs., Inc., 104 N.C. App. 411, 416, 409 S.E.2d 715, 718 (1991) ("In order to award attorney's fees of any significance, the Commission correctly calculated the fees on the basis of the total award . . . ."(emphasis added)). This Court also has permitted an award of attorney's fees pursuant to section 97-88.1 to be based upon a percentage of the moving party's total attorney expenses. See Bryson v. Phil Cline Trucking, 150 N.C. App. 653, 659, 564 S.E.2d 585, 589 (2002) ("Based on these facts, we are not prepared to hold that the Commission's decision to award plaintiff approximately one quarter of his reasonable attorney expenses as a punitive measure against defendants was, as a matter of law, completely without basis or reason."). However, in the instant case, the Full Commission provided no basis for its $500.00 "sanction" in paragraph 5 of the award, and therefore, we are unable to determine whether the award of attorney's fees was "'manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision.'" Wade v. Brush Mfg. Carolina Co., __ N.C. App. __, __, 652 S.E.2d 713, 717 (2007) (quoting State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).
Accordingly, we affirm the Full Commission's determination of plaintiff's average weekly wages, and we remand the Full Commission's Opinion and Award for clarification as to the attorney's fees and sanction awarded in paragraphs 5 and 6, respectively.
Affirmed in part; Vacated in part; Remanded.
Judges TYSON and ARROWOOD concur.
Report per Rule 30(e).