RONALD C. COX, Employee, Plaintiff v. CITY OF WINSTON-SALEM, Employer, SELF-INSURED, Defendant

No. COA02-370

(Filed 15 April 2003)

### 1. Workers' Compensation— temporary total disability— apportionment

The Industrial Commission did not err in a workers' compensation case by awarding temporary total disability benefits to plaintiff employee and by failing to apportion plaintiff's award of compensation as a result of his injury at work on 31 August 1998, because there was competent evidence before the Commission to support its finding that plaintiff's work-related injury accelerated plaintiff's pre-existing bone tumor.

### 2. Workers' Compensation— average weekly wage— calculation

The Industrial Commission's calculation of plaintiff employee's average weekly wage under N.C.G.S. § 97-2(5) in a workers' compensation case is remanded in order for the Commission to make findings showing its specific calculations in reaching plaintiff's average weekly wage.

### 3. Workers' Compensation— long-term disability retirement benefits—entitlement to credit

The Industrial Commission's decision in a workers' compensation case to grant defendant a credit for the long-term disability retirement benefits paid and to be paid to plaintiff employee until plaintiff reaches age sixty-five is remanded to the Commission for a hearing on whether defendant is entitled to a credit under N.C.G.S. § 97-42 and the amount, if any, based on findings as to whether the long-term disability benefits are funded solely by defendant's contributions or are made up of a combination of contributions from both plaintiff and defendant.

### 4. Workers' Compensation— attorney fees—entitlement to credit

The Industrial Commission's decision in a workers' compensation case to deny plaintiff employee's motion for an award of attorney fees under N.C.G.S. § 97-88, based on the fact that defendant was successful upon appeal with regard to entitlement

to a credit, is remanded because the case is already remanded on the issue of whether defendant is entitled to a credit.

**5. Workers' Compensation— interest on award—date of original hearing**

The Industrial Commission erred in a workers' compensation case by failing to allow plaintiff employee's motion for interest on the award to plaintiff from the date of the original hearing under N.C.G.S. § 97-86.2 and the case is remanded for the Commission to award plaintiff interest on his award from 25 May 2000.

Appeal by plaintiff and defendant from an opinion and award entered 10 September 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 23 January 2003.

*Robert A. Lauver for plaintiff-appellant.*

*Wilson & Iseman, L.L.P., by S. Ranchor Harris, III, for defendant-appellant.*

HUNTER, Judge.

The City of Winston-Salem ("defendant") appeals from the Industrial Commission's ("the Commission") opinion and award granting Ronald C. Cox ("plaintiff") temporary total disability benefits. Defendant challenges the Commission's award of benefits and claims the Commission erred in calculating plaintiff's average weekly wage. Plaintiff also appeals, challenging the Commission's decision to grant defendant a credit for the long-term disability retirement benefits paid and to be paid to plaintiff until plaintiff reaches age sixty-five. Plaintiff additionally assigns error to the Commission's denial of his motion for an award of attorney's fees and his motion for interest on the compensation award from the date of the original hearing. For the reasons set forth herein, we affirm in part and remand in part.

This claim arises from injuries plaintiff sustained when he fell into an open manhole on the night of 31 August 1998, while performing his job duties as a wastewater pump mechanic for defendant. The day after the fall, plaintiff was diagnosed with multiple contusions and restricted to no repetitive use of his right arm and shoulder. However, plaintiff immediately returned to work. By 9 September 1998, plaintiff's right shoulder and clavicle pain had become worse and plaintiff was referred to Dr. Howard Jones ("Dr. Jones"). X-rays revealed a probable dislocation of the right clavicle and plaintiff was

restricted from using his right arm. On 13 October 1998, Dr. Jones found that plaintiff continued to have an obvious mass over the sternoclavicular joint.

On 29 December 1998, Dr. Jones reevaluated plaintiff and referred him to Dr. Jerome Jennings ("Dr. Jennings"), an orthopedic surgeon, who diagnosed plaintiff as having a symptomatic subluxation of the sternoclavicular joint. Dr. Jennings then referred plaintiff to Dr. John Hayes ("Dr. Hayes"), who removed plaintiff from work on 2 February 1999. Plaintiff had surgery on 8 February 1999, during which Dr. Hayes found a solid cartilaginous tumor, referred to as an intraosseous chondrosarcoma, within the medial end of the clavicle and a fracture of the cortex of the right clavicle. On 25 February 1999, plaintiff underwent another surgery performed by Dr. Joel Morgan ("Dr. Morgan") and Dr. George Hoerr ("Dr. Hoerr") to remove all margins of tissue that may have been affected by the tumor.

Plaintiff remained out of work from 3 February 1999 to 25 April 1999. On 26 April 1999, Dr. Hoerr released plaintiff and allowed him to return to work with a restriction of no pulling of valves. Subsequently, on 30 April 1999, plaintiff aggravated the site of his right shoulder/clavicle injury while lifting a trash can at work. On 3 May 1999, due to this aggravation of the injury, plaintiff returned to Dr. Hayes and was restricted to no overhead lifting, maximum lifting of twenty-five pounds infrequently, and lifting ten pounds occasionally. Plaintiff was unable to perform the duties he was assigned even with these restrictions and was sent to Prime Care on 10 May 1999. Plaintiff was further restricted to no sweeping, no lifting, no pushing or pulling, and no squatting or climbing. Defendant was unable to provide plaintiff with a job within these additional restrictions. On 13 May 1999, Dr. Hayes wrote plaintiff out of work indefinitely. Plaintiff has not worked nor looked for work since 9 May 1999.

On 12 May 1999, plaintiff filed a Form 33 Request for Hearing. The case was heard before a deputy commissioner on 25 May 2000. At the outset of the hearing, the parties stipulated that plaintiff suffered an injury by accident in the course and scope of his employment, but defendant disputed the injuries sustained as a result of that accident. The deputy commissioner filed an opinion and award on 20 October 2000 from which defendant and plaintiff both appealed to the Full Commission. The Commission affirmed in part and modified in part the deputy commissioner's opinion and award by concluding the following in its 10 September 2001 opinion and award:

1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of his employment with defendant-employer on August 31, 1998. Additionally, this injury augmented and accelerated the disease process of the pre-existing intraosseous chondrosarcoma that was within plaintiff's right clavicle allowing the tumor to become more aggressive and to spread into adjacent tissues. N.C. Gen. Stat. § 97-2(6).

2. As a result of his injury and its consequences, plaintiff is entitled to temporary total disability benefits at a weekly rate of $393.75 from February 2, 1999 until April 26, 1999 and again beginning May 10, 1999 and continuing until he returns to work at the same or greater wages or until further order of the Commission, subject to a reasonable attorney's fee and defendant's credit. N.C. Gen. Stat. § 97-29.

3. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of his injury by accident so long as the treatment tends to effect a cure, give relief or lessen the period of plaintiff's disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-25.

4. Plaintiff's average weekly wage at the time of his injury by accident was $590.59 per week, yielding a compensation rate of $393.75. N.C. Gen. Stat. § 97-2(5).

5. Defendant is not entitled to a credit for the short-term disability plan to which only plaintiff contributed. However, defendant is entitled to a credit for the benefits paid and to be paid in the future pursuant to the employer funded long-term disability plan from which plaintiff began receiving benefits in October 1999 and will continue to receive benefits until his sixty-fifth birthday in the amount of $166.29 per week. N.C. Gen. Stat. § 97-42.

6. Plaintiff is not entitled to attorney's fees as defendant did not engage in stubborn or unfounded litigiousness and as defendant was successful upon appeal with regard to entitlement to a credit. N.C. Gen. Stat. § 97-88.1; § 97-88.

On 5 October 2001, plaintiff filed a motion for reconsideration, which the Commission denied on 20 December 2001. Plaintiff and defendant both appeal to this Court from the Commission's opinion and award.

COX v. CITY OF WINSTON-SALEM

[157 N.C. App. 228 (2003)]

DEFENDANT'S APPEAL

I.

**[1]** Defendant initially contends the Commission erred in concluding that plaintiff is entitled to temporary total disability compensation as a result of the cancerous tumor located in his right sternoclavicular joint because defendant asserts this tumor was not accelerated or aggravated by his fall on 31 August 1998. We disagree.

At the outset, appellate review of a decision of the Industrial Commission is limited to two issues: "(1) whether any competent evidence in the record supports the Commission's findings of fact, and (2) whether such findings of fact support the Commission's conclusions of law." *Creel v. Town of Dover*, 126 N.C. App. 547, 552, 486 S.E.2d 478, 480 (1997). "The Commission's findings of fact are conclusive on appeal if supported by competent evidence, notwithstanding evidence that might support a contrary finding." *Hobbs v. Clean Control Corp.*, 154 N.C. App. 433, 435, 571 S.E.2d 860, 862 (2002). However, the Commission's conclusions of law are subject to *de novo* review. *Holley v. Acts, Inc.*, 152 N.C. App. 369, 371, 567 S.E.2d 457, 459 (2002). In addition, the "Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683-84 (1982). Moreover, "[t]he evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998).

Our Supreme Court has stated that "[w]hen a pre-existing, *non-disabling, non-job-related* condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment . . . then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent." *Morrison v. Burlington Industries*, 304 N.C. 1, 18, 282 S.E.2d 458, 470 (1981). Further, "[i]n such a case[] where an injury has aggravated an existing condition and thus proximately caused the incapacity, the relative contributions of the accident and the pre-existing condition will not be weighed." *Wilder v. Barbour Boat Works*, 84 N.C. App. 188, 196, 352 S.E.2d 690, 694 (1987).

In the case *sub judice*, Dr. Hayes opined that the trauma to plaintiff's right clavicle from his fall on 31 August 1998, damaged the cor-

tex of the bone that had previously confined the tumor and allowed the tumor to grow out of the confines of the bone into the surrounding soft tissues. Dr. Hayes testified that the trauma from the fall accelerated the onset of plaintiff's disability which began 3 February 1999. Dr. Tucker testified that if the tumor was found to have extended beyond the cortex of the clavicle at the site of the fracture, then the fall could have allowed the tumor to extend into the mediastinum, which is the thorax located centrally beneath the sternum. The Commission acknowledged that another expert, Dr. Chrysson, gave conflicting opinions concerning the causal relationship between plaintiff's fall and plaintiff's condition as related to the tumor. However, the Commission gave greater weight to Dr. Hayes' opinion. As noted earlier, the "Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683-84. Thus, after reviewing the record, we conclude that the Commission's findings, which are supported by competent evidence, in turn support the Commission's conclusion that plaintiff's injury sustained from his fall on 31 August 1998, "augmented and accelerated the disease process of the pre-existing intraosseous chondrosarcoma that was within plaintiff's right clavicle allowing the tumor to become more aggressive and to spread into adjacent tissues."

There is also ample evidence and findings to support the Commission's conclusion that plaintiff is entitled to temporary total disability benefits from 2 February 1999 until 26 April 1999 and again beginning 10 May 1999 and continuing until plaintiff returns to work at the same or greater wages or until further order of the Commission. Plaintiff bore the burden of showing that he had suffered a "disability" (loss of wage-earning capacity) pursuant to N.C. Gen. Stat. § 97-29 (2001). *See* N.C. Gen. Stat. § 97-2(9) (2001). We conclude plaintiff satisfied this burden. Plaintiff was written out of work by his doctors from 2 February 1999 to 26 April 1999. On 30 April 1999, plaintiff aggravated the site of his right shoulder/clavicle injury while lifting a trash can. Thereafter, plaintiff returned to Dr. Hayes on 3 May 1999 and was restricted to light duty. Plaintiff was unable to perform his duties even with these restrictions and was further restricted to no sweeping, no lifting, no pushing or pulling, and no squatting or climbing. Defendant was unable to provide plaintiff a job within these additional restrictions. On 13 May 1999, Dr. Hayes wrote plaintiff out of work indefinitely. In addition, evidence was presented that plaintiff was fifty-five years old and all of his past work experience had been in manual labor. Dr. Hayes noted that plaintiff was

unable to even perform janitorial work. There was also evidence that plaintiff's education was limited to special education classes due to a significant learning disability and plaintiff is a non-reader. Thus, it would be futile for plaintiff to seek other non-manual employment because of his prior experience, lack of education, and learning disability and according to the medical evidence, plaintiff is physically unable to perform manual labor. *See Trivette v. Mid-South Management, Inc.*, 154 N.C. App. 140, 571 S.E.2d 692 (2002). Therefore, the Commission was proper in concluding that plaintiff became totally disabled as a result of his injury at work on 31 August 1998 and in awarding temporary total disability benefits.

Defendant argues, in the alternative, that the Commission should have apportioned plaintiff's award of compensation. "However, apportionment is not permitted when an employee becomes totally and permanently disabled due to a compensable injury's aggravation or acceleration of the employee's nondisabling, pre-existing disease or infirmity." *Errante v. Cumberland County Solid Waste Management*, 106 N.C. App. 114, 119, 415 S.E.2d 583, 586 (1992). We previously concluded that there was competent evidence before the Commission to support its finding that plaintiff's work-related injury accelerated plaintiff's pre-existing bone tumor. Therefore, the Commission properly declined to apportion the award.

II.

[2] Defendant next claims the Commission erred in finding that plaintiff's average weekly wage at the time of his injury by accident was $590.59 per week. Defendant contends plaintiff's average weekly wage was $544.14, which was supported by the Form 22.

Pursuant to N.C. Gen. Stat. § 97-2(5),

"[a]verage weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . divided by 52; but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. . . .

N.C. Gen. Stat. § 97-2(5). Plaintiff argues that in calculating plaintiff's average weekly wage, the Commission properly included a longevity

bonus in the amount of $600.29 and the overtime adjustment for longevity in the amount of $57.64 paid to plaintiff on 1 December 1997, which was not included in the Form 22 calculation. Plaintiff further argues that the Commission properly divided plaintiff's total gross earnings by 50.71 weeks (52 weeks less 1.29 weeks) because plaintiff did not work from 22 August 1998 through 30 August 1998, as shown on the face of the Form 22.

Plaintiff asserts that the Commission correctly calculated plaintiff's average weekly wage as follows: total gross earnings of $29,953.02 ($28,295.09, figure obtained from Form 22, + longevity bonus of $657.93) divided by 50.71 weeks (52 weeks less 1.29 weeks). However, this calculation does not result in the Commission's finding of an average weekly wage of $590.59 since ($28,295.09 + $657.93) does not equal $29,953.02. We are unable to ascertain from the record how the Commission determined plaintiff's average weekly wage since the Commission's finding does not conform to the Form 22. Therefore, we remand this case for the Commission to make findings showing its specific calculations in reaching plaintiff's average weekly wage.

## PLAINTIFF'S APPEAL

### I.

[3] Plaintiff contends the Commission erred in finding that "defendant-employer has paid, without contribution from the plaintiff, for the long-term disability benefits that plaintiff will receive until his sixty-fifth birthday." Plaintiff further argues the Commission erred in concluding, based upon this finding, that

> defendant is entitled to a credit for the benefits paid and to be paid in the future pursuant to the employer funded long-term disability plan from which plaintiff began receiving benefits in October 1999 and will continue to receive benefits until his sixty-fifth birthday in the amount of $166.29 per week.

Plaintiff asserts that disability retirement allowance is the sum of employee contributions and employer contributions. Accordingly, plaintiff claims that defendant is not entitled to a credit for such disability payments pursuant to N.C. Gen. Stat. § 97-42 (2001).

"The decision of whether to grant a credit is within the sound discretion of the Commission." *Shockley v. Cairn Studios Ltd.*, 149 N.C.

App. 961, 966, 563 S.E.2d 207, 211 (2002). Therefore, this Court will not disturb the Commission's grant or denial of a credit to the employer on appeal in the absence of an abuse of discretion. *Id.* N.C. Gen. Stat. § 97-42 "is the only statutory authority for allowing an employer in North Carolina any credit against workers' compensation payments due an injured employee." *Effingham v. Kroger Co.*, 149 N.C. App. 105, 119, 561 S.E.2d 287, 296 (2002). This statute provides the following, in pertinent part:

> Payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this Article were not due and payable when made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation. . . . Unless otherwise provided by the plan, when payments are made to an injured employee pursuant to an employer-funded salary continuation, disability or other income replacement plan, the deduction shall be calculated from payments made by the employer in each week during which compensation was due and payable, without any carry-forward or carry-back of credit for amounts paid in excess of the compensation rate in any given week.

N.C. Gen. Stat. § 97-42.

In the instant case, plaintiff was paid disability retirement benefits from the State of North Carolina Local Governmental Employees' Retirement System. Clark Case ("Mr. Case"), who is financial systems and employee accounting manager for defendant, explained at the hearing that plaintiff's disability retirement benefits are fully funded by defendant until plaintiff reaches age sixty-five. According to Mr. Case, plaintiff's contributions do not go toward his disability retirement benefits but instead go to the retirement benefits that he will begin to receive upon reaching the age of sixty-five. Plaintiff offered no evidence contradicting Mr. Case's testimony at the hearing. However, after the Commission filed its opinion and award, plaintiff filed a motion for reconsideration and submitted an affidavit from J. Marshall Barnes, III ("Mr. Barnes"), who is Deputy Director of the Retirement Systems Division in the Department of State Treasurer for the State of North Carolina. Mr. Barnes' affidavit directly conflicts with Mr. Case's testimony. Mr. Barnes stated that "[t]he disability benefits paid to [plaintiff] by the Local Governmental Employees' Retirement System represent a combination of employee contributions which were deducted from his wages, employer contributions and interest/investment earnings on total contributions as defined by

N.C.G.S. § 128-27(c), entitled Disability Retirement Benefits." In light of the directly conflicting statements from Mr. Case and Mr. Barnes, we remand this case to the Commission for a hearing on the credit issue. The Commission shall make findings as to whether the long-term disability benefits received and to be received by plaintiff until he reaches age sixty-five are funded solely by defendant's contributions or are made up of a combination of contributions from both plaintiff and defendant. After making this determination, the Commission must then conclude whether defendant is entitled to any credit for these long-term disability benefits pursuant to Section § 97-42 and if so, to how much credit defendant is entitled.

## II.

**[4]** Plaintiff next argues the Commission erred in applying the standard under N.C. Gen. Stat. § 97-88.1 (2001), when considering plaintiff's motion for an award of an attorney's fee pursuant to N.C. Gen. Stat. § 97-88 (2001).

We initially note that an attorney's fee award is within the Commission's discretion and therefore, the Commission's award or denial of an award must be upheld absent an abuse of that discretion. *Taylor v. J. P. Stevens*, 57 N.C. App. 643, 648, 292 S.E.2d 277, 280 (1982). In the instant case, plaintiff moved for an award of attorney's fees pursuant to Section 97-88.

The Commission or a reviewing court may award an injured employee attorney's fees "[u]nder section 97-88, . . . if (1) the insurer has appealed a decision to the full Commission or to any court, and (2) on appeal, the Commission or court has ordered the insurer to make, or continue making, payments of benefits to the employee." *Estes v. N.C. State University*, 117 N.C. App. 126, 128, 449 S.E.2d 762, 764 (1994). Section 97-88 "permits the Full Commission or an appellate court to award fees and costs based on an insurer's unsuccessful appeal." *Rackley v. Coastal Painting*, 153 N.C. App. 469, 475, 570 S.E.2d 121, 125 (2002). Section 97-88 does not require that the appeal be brought without reasonable ground for plaintiff to be entitled to attorney's fees. *Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 464 S.E.2d 481 (1995). "By contrast, an award of attorney's fees under N.C.G.S. § 97-88.1 requires that the litigation be brought, prosecuted, or defended without reasonable ground." *Id.* at 53-54, 464 S.E.2d at 485. The purpose of this statute "is to prevent 'stubborn, unfounded litigiousness' which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to

injured employees." *Beam v. Floyd's Creek Baptist Church*, 99 N.C. App. 767, 768, 394 S.E.2d 191, 192 (1990) (quoting *Sparks v. Mountain Breeze Restaurant & Fish House, Inc.*, 55 N.C. App. 663, 664, 286 S.E.2d 575, 576 (1982)).

In the case *sub judice*, the Commission concluded that plaintiff was "not entitled to attorney's fees as defendant did not engage in stubborn or unfounded litigiousness and as defendant was successful upon appeal with regard to entitlement to a credit. N.C. Gen. Stat. §97-88.1; §97-88." We acknowledge that the Commission unnecessarily concluded that plaintiff was not entitled to attorney's fees under Section 97-88.1 by stating that "defendant did not engage in stubborn or unfounded litigiousness," since plaintiff's motion for attorney's fees was not made pursuant to Section 97-88.1. However, the Commission also concluded that plaintiff was not entitled to attorney's fees under Section 97-88 because "defendant was successful upon appeal with regard to entitlement to a credit." As stated earlier, Section 97-88 "permits the Full Commission or an appellate court to award fees and costs based on an insurer's unsuccessful appeal." *Rackley*, 153 N.C. App. at 475, 570 S.E.2d at 125. Therefore, the Commission applied the proper standard in determining whether plaintiff was entitled to attorney's fees under Section 97-88. However, because we are remanding this case for a hearing on the credit issue we must also remand the issue of whether plaintiff is entitled to an award of attorney's fees for the Commission to consider in light of their determination of the credit issue.

III.

[5] Plaintiff finally claims the Commission erred in failing to allow his motion for interest on the award to plaintiff from the date of the original hearing pursuant to N.C. Gen. Stat. § 97-86.2 (2001). Defendant does not dispute this contention. We conclude plaintiff is entitled to interest on the award to plaintiff from the date of the original hearing, 25 May 2000, pursuant to Section 97-86.2. Accordingly, we remand this case for the Commission to award plaintiff interest on his award from 25 May 2000.

In summary, as to defendant's appeal, we affirm the Commission's award of temporary total disability benefits and remand for the Commission to make findings showing its specific calculations in reaching plaintiff's average weekly wage. As to plaintiff's appeal, we remand for a hearing on whether defendant is entitled to a credit and if so, the amount of credit to which defendant is entitled. We further

NEW HANOVER CTY. EX REL. MANNTHEY v. KILBOURNE

[157 N.C. App. 239 (2003)]

remand this case for the Commission to determine whether plaintiff is entitled to attorney's fees in light of its conclusion on the credit issue. Finally, we hold that plaintiff is entitled to interest on the award to plaintiff from the date of the original hearing on 25 May 2000 and remand for the Commission to award plaintiff interest on his compensation award.

Affirmed in part and remanded in part.

Judges McGEE and CALABRIA concur.