HUBERT CHAMBERS, Plaintiff-Employee v. TRANSIT MANAGEMENT, Defendant-Employer, SELF INSURED (Compensation Claims Solutions, Servicing Agent)

No. COA04-677

(Filed 16 August 2005)

**1. Workers' Compensation— appellate review—standard of review**

Review of an Industrial Commission decision by the Court of Appeals is limited to whether there is competent evidence to support the Commission's findings of fact and whether those findings support the conclusions of law.

**2. Workers' Compensation— specific traumatic injury—compensable occupational disease**

There was sufficient evidence in a workers' compensation hearing to support findings by the Industrial Commission that a bus driver who developed a cervical spine condition and an ulnar neuropathy was entitled to disability income as compensation for an injury resulting from a specific traumatic incident as well as for injuries resulting from a compensable occupational disease.

The Commission judges the credibility of witnesses and determines the weight to be given the testimony.

Judge JACKSON concurring in part and dissenting in part.

Appeal by defendant from Opinion and Award of the North Carolina Industrial Commission filed 3 February 2004 for the Full Commission by Commissioner Thomas J. Bolch. Heard in the Court of Appeals 27 January 2005.

*Sellers, Hinshaw, Ayers, Dortch & Lyons, P.A., by Robert A. Whitlow, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by John Brem Smith and Jennifer I. Mitchell, for defendant-appellant.*

BRYANT, Judge.

Hubert Chambers (plaintiff) was a fifty-nine-year-old high school graduate who had been employed as a bus driver for Transit Management (defendant) since 9 April 1970. Plaintiff's job duties consisted of driving two types of buses: the Nova bus and the Flexible bus, both of which required plaintiff to operate the parking brake, destination box, toggle switch (for activating the bus' four-way flashers) and adjusting both interior and exterior mirrors on the bus. Plaintiff normally worked seven hour shifts, six days per week. Plaintiff estimated that driving the bus required the use of both hands ninety to one hundred percent of the time, but greater use of his left hand was required to operate the various controls located on the left side of the bus. Drivers were assigned bus routes every three to four months.

On 4 December 2000, plaintiff was assigned a new bus route and began work at approximately 4:00 p.m. Plaintiff began experiencing neck and shoulder problems sometime that afternoon and between 10:00 and 11:00 p.m. he reported his difficulties to his dispatcher and requested a replacement. Plaintiff was unsure whether the cause of his injury was actually work related and did not fill out an injury/illness report until 18 December 2000 at which time he listed only having problems with his left arm.

Plaintiff initially sought treatment from his family physician who subsequently referred plaintiff to Charlotte Orthopedic Specialists. From 29 December 2000 through 16 March 2001, plaintiff was seen by several doctors at Charlotte Orthopedic Specialists and on 2 April

2001, plaintiff was seen by a neurologist, Dr. Tim E. Adamson. An MRI ordered by Dr. Adamson showed plaintiff had, among other things, neural foraminal narrowing at the C5-6 level on the left. Dr. Adamson subsequently performed two surgeries on plaintiff. Following the first surgery, Dr. Adamson cleared plaintiff to return to work on 30 July 2001. Without attempting to return to work, plaintiff contacted Dr. Adamson and told him he felt he could not return to work with defendant. Plaintiff then underwent nerve conduction studies that revealed ulnar neuropathy for which plaintiff underwent surgery on 28 September 2001. On 5 March 2002 plaintiff had a Functional Capacity Evaluation (FCE) which indicated his level of function most closely resembled the category of sedentary to light physical demand. Dr. Adamson gave plaintiff a thirty percent permanent partial impairment rating for his left arm.

On 20 September 2002, plaintiff's claim was heard before Deputy Commissioner Nancy W. Gregory, who filed an Opinion and Award on 24 February 2003 denying plaintiff's claims for workers' compensation benefits. Deputy Commissioner Gregory concluded plaintiff did not sustain an injury by accident or a specific traumatic incident arising out of and in the course of his employment. Plaintiff appealed to the Full Commission (Commission) which filed an Opinion and Award on 3 February 2004, reversing Deputy Commissioner Gregory's denial of workers' compensation benefits to plaintiff. The Commission concluded plaintiff had sustained a cervical spine injury as a result of a specific traumatic incident and that plaintiff's ulnar nerve entrapment neuropathy and cervical spine condition constituted occupational diseases. The Commission ordered defendant to pay plaintiff disability income and his medical expenses arising from the injury and disease. Defendant appeals the Opinion and Award of the Commission.

On appeal, defendant raises three issues: (I) whether the Commission erred in determining plaintiff suffered a cervical spine injury as a result of a specific traumatic incident during the course of his employment on 4 December 2000; (II) whether the Commission erred in determining plaintiff's ulnar neuropathy and cervical spine condition were compensable occupational diseases; and (III) whether the Commission erred in concluding plaintiff is entitled to continuing disability benefits. For the following reasons, we find no error.

[1] It is well-settled that review of an Industrial Commission decision by this Court is limited to the determination of whether there is com-

petent evidence to support the Commission's Findings of Fact and whether those findings support the Conclusions of Law. *Cox v. City of Winston-Salem,* 157 N.C. App. 228, 232, 578 S.E.2d 669, 673 (2003); *Pernell v. Piedmont Circuits,* 104 N.C. App. 289, 292, 409 S.E.2d 618, 619 (1991). The Commission's findings of fact are conclusive on appeal even where there is contrary evidence, and such findings may only be set aside where there is a "complete lack of competent evidence to support them." *Johnson v. Herbie's Place,* 157 N.C. App. 168, 171, 579 S.E.2d 110, 113 (2003) (citation omitted); *see also Adams v. AVX Corp.,* 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). Our review " 'goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Id.*

**[2]** In his deposition, Dr. Adamson provided the following testimony:

> Q. And would you have an opinion about whether the type of job duties that have been identified would have placed him at an increased risk of developing these types of symptoms and problems, or aggravation of the condition in the cervical spine as opposed to the general population?
>
> A: I would believe so, yes.

This testimony clearly states, in Dr. Adamson's opinion, that the plaintiff's occupation as a bus driver placed him at higher risk than the general public of developing a cervical spine condition. Admittedly there was conflicting testimony from Dr. Dover as to whether plaintiff's occupation placed him at increased risk. However, the Commission, not the appellate court, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Bailey v. Sears Roebuck & Co.,* 131 N.C. App. 649, 653, 508 S.E.2d 831, 834 (1998).

Additionally, the Commission made the following significant finding of fact concerning plaintiff's claims that his injuries were the result of a compensable occupational disease and qualified as originating from a specific traumatic incident:

> 9. Dr. Adamson rendered opinions, which the Full Commission finds to be fact, that plaintiff's job duties with defendant caused or aggravated the conditions for which treatment was rendered and that plaintiff's job placed him at an increased risk of developing these conditions. The sudden pain to plaintiff's neck on December 4, 2000, qualifies under North Carolina law as a specific traumatic incident of the work assigned.

The Commission also made the following Conclusions of Law:

1. The medical and testimonial evidence supports compensability of plaintiff's ulnar nerve entrapment neuropathy condition, "double crush syndrome", and aggravation of cervical spine condition as occupational diseases under N.C. Gen. Stat. § 97-53(13). Additionally, since the disabling aggravation of the cervical spine occurred within a cognizable time period, it qualifies as a specific traumatic incident. N.C. Gen. Stat. § 97-2(6).

2. Disability caused by, or death resulting from, a disease is compensable only when 'the disease is an occupational disease, **or aggravated or accelerated by**' causes and conditions characteristic of and peculiar to claimant's employment. [(emphasis in original) (citations omitted).] Where, as here, there is evidence of both causation and aggravation connected to particular aspects of an employee's job duties (i.e. repetitious activity) to which the general public is not exposed, compensability is logically and legally warranted . . . .

3. The medical and testimonial evidence supports compensability of plaintiff's cervical injury as a specific traumatic incident under N.C. Gen. Stat. § 97-2(6).

This record contains sufficient evidence to support the facts found by the Commission. Acknowledging the Commission's duty to judge the credibility of the witnesses and to determine the weight given to testimony, these facts are sufficient to support the conclusion of the Commission that plaintiff is entitled to disability income as compensation for his injury resulting from a specific traumatic incident as well as for injuries resulting from a compensable occupational disease.

Affirmed.

Judge HUNTER concurs.

Judge JACKSON concurring in part; dissenting in part.

JACKSON, Judge, concurring in part; dissenting in part.

For the reasons stated below, I must respectfully dissent from the majority's decision to affirm the Opinion and Award of the Industrial Commission in its entirety.

The majority addresses only defendant's assignment of error that the Commission erred in determining plaintiff's ulnar neuropathy and cervical spine condition were compensable occupational diseases. While I concur with the majority's conclusion that there is competent evidence to support the Commission's finding that plaintiff's ulnar neuropathy was compensable, I am unable to concur with that conclusion regarding plaintiff's cervical spine condition.

The majority bases its decision with regard to plaintiff's cervical spine condition upon Dr. Adamson's response, on direct examination, to the question:

And would you have an opinion about whether the type of job duties that have been identified would have placed him at an increased risk of developing these type of symptoms and problems, or aggravation of the condition in the cervical spine as opposed to the general population?

This question clearly asks if Dr. Adamson had an opinion as to whether plaintiff's job duties would have placed him at a greater risk of *either* causing *or* aggravating his cervical spine conditions. A plaintiff's job duties must place him at a greater risk of developing the condition than the general population for it to be compensable under our Workers Compensation Act. N.C. Gen. Stat. § 97-53(13); *Rutledge v. Tultex Corp.*, 308 N.C. 85, 93-95, 301 S.E.2d 359, 365-66 (1983). Dr. Adamson's response to this question, "I, would believe so, yes," is *not sufficient to support compensability.* Dr. Adamson's response is ambiguous, as it relates to compensability, since it is unclear if Dr. Adamson's opinion is that plaintiff's job duties placed him at a greater risk of developing the condition, aggravating it, or both.

This ambiguity is resolved, however, by Dr. Adamson's testimony upon cross-examination. With regard to the specific testimony cited by the majority, Dr. Adamson was asked:

In response to Mr. Whitlow's question in which he asked you to assume that the job site analysis is accurate and the accuracy of what's in the videotape concerning questions about the left ulnar neuropathy, *I want to make sure I'm clear on what you have indicated, am I correct in understanding that in your opinion, you're not able to say that the bus driving activities caused the ulnar neuropathy, but that it could have aggravated the ulnar neuropathy?*

(Emphasis added.) Dr. Adamson responded, "I think that's correct." Dr. Adamson was then asked, "[a]nd the same thing was basically true for the neck condition, the condition as treated there?" He responded, "[s]ure." This testimony makes clear that, in Dr. Adamson's opinion, plaintiff's job duties placed him at a greater risk of aggravating the conditions, but not of developing them. This testimony is not in conflict with Dr. Adamson's testimony on direct examination, but rather clarifies his response to the compound question asked by plaintiff's attorney.

Nor does this testimony create a conflict between the testimony of different witnesses thus requiring the Commission to weigh the testimony and determine the credibility of conflicting witnesses. There is no conflict between the testimony of Dr. Adamson and Dr. Dover regarding whether plaintiff was at an increased risk of developing his cervical disease due to his job duties. Both doctors' testimony was clear that plaintiff was not at greater risk than the general public. Consequently, the Commission's decision was not based on its judgment of the weight and credibility of witnesses and therefore beyond our scope of review, but rather it was based upon insufficient evidence and is subject to reversal.

Focusing on one portion of a witness' testimony, to the exclusion of other testimony by the same witness that develops or clarifies that testimony, sets a dangerous precedent. To do so will allow a witness' misstatement, an answer based on a misunderstanding of the question, or, as in this case, a simple answer to a compound question to be the basis for an Opinion and Award of the Commission even if the testimony is later corrected or clarified on cross-examination. This clearly would frustrate one of the primary purposes of cross-examination. These are not two separate pieces of evidence to be considered separately, but rather interrelated parts of the same evidence which must be considered in conjunction with each other.

In addition to the assignment of error discussed above, defendant assigned error to the Commission's finding that plaintiff suffered a compensable cervical spine injury on 4 December 2000. Two theories exist upon which a compensable back injury can be based: "(1) injury by accident . . . or (2) injury . . . [resulting] from a specific traumatic incident." *Livingston v. James C. Fields & Co.*, 93 N.C. App. 336, 337, 377 S.E.2d 788 (1989). Plaintiff's cervical spine injury was found to be compensable by the full Commission under the second theory. Defendant contends plaintiff's cervical spine injury cannot be compensable as arising from a specific traumatic injury since the evi-

dence must show that there was some event which caused the injury. *Fish v. Steelcase, Inc.*, 116 N.C. App. 703, 709, 449 S.E.2d 233, 238 (1994), *cert. denied*, 339 N.C. 737, 454 S.E.2d 650 (1995). The *Fish* Court explained that a worker is required only to show the injury occurred at a "judicially cognizable" point in time to prove a specific traumatic incident. *Id.* The Court continued:

> *Judicially cognizable* does not mean "ascertainable on an exact date." Instead, the term should be read to describe a showing by plaintiff which enables the Industrial Commission to determine when, within a reasonable period, the specific injury occurred. The evidence must show that there was some event that caused the injury, *not a gradual deterioration.* If the window during which the injury occurred can be narrowed to a judicially cognizable period, then the statute is satisfied.

*Id.*

The full Commission found the pain in plaintiff's neck, left arm, and shoulder occurred within a judicially cognizable period of time on 4 December 2000 while he was performing his job-related duties. This finding was supported by uncontroverted testimony and documentation identifying the onset of the symptoms of plaintiff's injury to have manifested themselves during his work shift on 4 December 2000.

Although the onset of plaintiff's symptoms relating to his cervical spine condition were found to have occurred in a judicially cognizable period of time, they still must have "aris[en] out of and in the course of his employment" in order to be compensable. N.C. Gen. Stat. § 97-2(6) (2003). In his deposition testimony, Dr. Adamson stated, regarding plaintiff's cervical condition, "the general abnormality is not considered a work-related event. . . ." This statement is unequivocal that plaintiff's cervical spondylosis was not considered a work-related injury and there is no other evidence in the record to the contrary. Therefore, I would hold that the full Commission erred in concluding that plaintiff suffered a compensable cervical spine injury as a result of a specific traumatic incident during the course of his employment on 4 December 2000.

Defendant also assigns as error the Commission's conclusion that plaintiff is entitled to continuing disability benefits. Defendant presents two alternative bases for its contention: (1) plaintiff failed to prove that he is disabled as defined by North Carolina General

Statutes section 97-2(9) and (2) plaintiff refused to accept suitable alternative employment and is, therefore, not entitled to receive continuing benefits even if it is determined that he is disabled.

The Workers' Compensation Act defines "disability" as: "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2003). Our Supreme Court has held that for an employee to be "disabled" under our Workers' Compensation Act the Commission must find that: (1) the employee "was incapable after his injury of earning the same wages he had earned before his injury in the same employment"; (2) the employee "was incapable after his injury of earning the same wages he had earned before his injury in any other employment"; and (3) the employee's "incapacity to earn was caused by [his] injury." *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982).

As the Commission has exclusive original jurisdiction over workers' compensation hearings, it must hear the evidence and file an award, "together with a statement of the findings of fact, rulings of law, and other matters pertinent to the questions at issue." N.C. Gen. Stat. § 97-84 (2003). The Commission is not required to make findings regarding each fact in the evidence presented, however, it must make findings regarding the specific facts which are crucial to the determination of the right of compensability in order to allow a reviewing court to determine if the Commission's award is adequately supported by the evidence. *Johnson v. Southern Tire Sales and Serv.*, 358 N.C. 701, 705, 599 S.E.2d 508, 511 (2004) (*citing Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 551, 85 S.E.2d 596, 599 (1955)).

The only findings of fact made by the Commission regarding plaintiff's ability to work are the following:

18. Plaintiff underwent a functional capacity evaluation on March 5, 2002. Dr. Adamson reviewed the functional capacity evaluation and concurred with the results. On May 13, 2002, he rated plaintiff with a 30% permanent partial impairment of the left upper extremities, which Dr. Adamson later clarified to be the arm and not merely the hand. Furthermore, according to Dr. Adamson, plaintiff is capable of sedentary to light work, but not of driving the bus due to the use of the left hand and public safety issues.

19. Plaintiff has not returned to work for defendant or another employer. The greater weight of the evidence demonstrates

that plaintiff is incapable of returning to his former employment. Defendant has neither offered work to plaintiff within his restrictions, nor offered or provided vocational rehabilitation or retraining.

There is evidence in the record to support the findings that plaintiff has not returned to work with any employer and that he currently is unable to return to his former employment. However, whether or not plaintiff is able to return to his former employment is not the correct standard for determining disability. The correct standard is whether plaintiff is incapable of earning the same wages he was earning at the time of the injury in the same or alternate employment. N.C. Gen. Stat. § 97-2(9) (2003); *see Hilliard*, 305 N.C. at 395, 290 S.E.2d at 683. The Commission failed to find facts sufficient to allow this Court to review whether the award of continuing disability compensation to plaintiff is adequately supported by the evidence. Therefore, I would remand this matter to the Commission for further findings of fact regarding this issue.