* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner DeLuca and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner DeLuca except with regard to the issue of the causal relationship of plaintiff's leg and hip pain to the compensable injury and the issue of ongoing disability.
 * * * * * * * * * * * RULING ON EVIDENTIARY MATTER
Defendants request the Opinion and Award by Deputy Commissioner DeLuca be vacated as jurisdiction over this matter should have remained with the Full Commission. While the Full *Page 3 
Commission recognizes that the Court of Appeals has opined in Joyner v.Rocky Mount Mills, 92 N.C. App. 478, 374 S.E.2d 610 (1988) that it is better practice for the Full Commission to retain jurisdiction in cases such as this one, the Full Commission does retain authority to remand cases for hearing and the rendering of an Opinion and Award by a Deputy Commissioner. Under the circumstances of this case, the Full Commission deemed it more reasonable to remand to a Deputy Commissioner for the taking of additional testimony and depositions and the issuance of an Opinion and Award. All evidence was reviewed de novo by this panel. As such, defendants request is denied.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and W.A. Brown Sons at all times relevant to this case.
3. The PMA Group Insurance Company is the carrier on this claim.
4. Plaintiff alleged on her Form 18, and defendants denied on their Form 61, that plaintiff suffered an injury to her back by specific traumatic incident on or about October 11, 2001, which arose out of and in the course of her employment.
5. Plaintiff contends that her average weekly wage was $552.37 pursuant to the Form 22 provided by defendants on March 17, 2003.
6. The parties stipulate that the correct compensation rate is $363.00. *Page 4 
7. In addition, at the hearing before the Deputy Commissioner, the parties stipulated into evidence the following:
 i. Packet of medical records and reports.
 ii. Packet of Industrial Commission forms, discovery responses and personnel documents.
 iii. Plaintiff's pay stub for the period ending August 18, 2001.
 iv. Additional medical reports from Dr. Bost submitted November 14, 2003.
 v. Transcript of the first hearing, including exhibits and depositions.
 vi. Opinion and Award of Full Commission filed January 5, 2005.
8. The Pre-Trial Agreement dated September 16, 2003, which was submitted by the parties, is incorporated by reference.
 * * * * * * * * * * *
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. Plaintiff was born on March 29, 1971. Plaintiff will be 36 years old at the time of the filing of this Opinion and Award. Plaintiff earned a high school diploma and successfully completed a two-year course at Salisbury Business College to obtain a certificate as an office assistant. This training allows plaintiff to seek office, secretarial, typing, receptionist and customer service jobs.
2. In its Opinion and Award of January 18, 2005, the Full Commission concluded that plaintiff had sustained an injury by accident arising out of and in the course of her employment with defendant-employer in that she sustained a back injury as a result of a specific *Page 5 
traumatic incident of the work assigned. The Full Commission further concluded that the aggravation or exacerbation of plaintiff's pre-existing back condition as a result of a specific traumatic incident, which has resulted in loss of wage capacity, is compensable under the Workers' Compensation Act. The Full Commission's Opinion and Award of January 18, 2005 is incorporated by reference as if fully set forth herein.
3. Plaintiff sustained a back injury as a result of a specific traumatic incident on or about October 10, 2001. Initially, plaintiff attempted to return to work but was unable to continue working due to increased pain and on October 14, 2001, she sought medical treatment at ProMed. The medical note recorded plaintiff's subjective history of low back pain but does not mention plaintiff reporting any leg or hip pain. X-rays were taken and the radiologist thought there might be some spondylolysis at L5-S1. Plaintiff was not taken out of work following this visit.
4. Plaintiff saw Dr. William T. Mason, an orthopedic surgeon, on October 18, 2001. Despite the medical records indicating otherwise, plaintiff testified that she reported experiencing symptoms for six months but that she had also been injured on the job. She was demonstrating so much pain behavior on that occasion that Dr. Mason's examination of her was limited. He ordered physical therapy, prescribed medication, and wrote plaintiff out of work. After a period of physical therapy, her symptoms appeared to become more localized to the low back and left leg.
5. Dr. Mason subsequently ordered an MRI, which revealed a left-sided bulging disc at L5-S1. There was no evidence of nerve root compression so the findings did not correlate well with her symptoms and did not then warrant surgery. On November 29, 2001, plaintiff first reported complaints of left hip pain and x-rays of the hip revealed arthritic changes in the hip *Page 6 
joint. Dr. Mason injected the hip on November 29, 2001, but the injection did not give relief. As of December 5, 2001, plaintiff was complaining of left leg pain, so Dr. Mason referred her for a neurosurgical evaluation to Dr. Ranjan S. Roy, a neurosurgeon with Piedmont Neurosurgery Spine, P.A.
6. Dr. Mason wrote plaintiff out of work beginning October 18, 2001 and continuing until at least her next appointment. Thereafter, Dr. Mason's medical records do not reflect that he ever released her to return to any type of work.
7. Dr. Roy examined plaintiff on December 12, 2001. At the time of his evaluation, she was using a cane to ambulate reportedly because her left leg was not working right and she was walking funny. Plaintiff reported low back pain with groin pain on the left side and with radiation along the lateral aspect of the thigh. His examination was hampered somewhat by limitations on testing, which plaintiff attributed to her level of pain. Since the findings on her MRI did not appear to explain her symptoms, Dr. Roy recommended additional diagnostic tests and kept her out of work. Plaintiff did not return to him until February 5, 2002, at which time Dr. Roy indicated that plaintiff's walking and abnormal sensation in the left leg had improved markedly but there was continued discomfort in the left groin and lower back. She requested that he refer her to a chiropractor, so he sent her to Dr. Brent Bost, who treated her for several weeks and then referred her back to Dr. Roy.
8. By the next office visit with Dr. Roy on April 3, 2002, plaintiff's condition had worsened and plaintiff complained of low back pain and lateral left leg pain that stopped at the knee. Dr. Roy continued to treat her with conservative measures since there was not an objective explanation for her symptoms. When plaintiff returned to Dr. Roy on May 14, 2002, she complained of posterior left leg pain and low back pain. He ordered nerve tests, which she was *Page 7 
only partially able to complete due to complaints of severe pain; however, the testing did not show any abnormalities in the nerves on which the doctor was focusing. Dr. Roy also suggested a discogram. The test was attempted on September 9, 2002, but was terminated at plaintiff's request due to high levels of reported pain. The test was successfully performed on September 10, 2002. Although plaintiff reported pain at every level injected, Dr. Roy interpreted the test as showing concordant pain at L5-S1 and possibly L4-5. The post-discogram CT scan showed an annular tear in the disc at L5-S1.
9. Dr. Roy then recommended weight loss and had plaintiff try a TLSO brace to see if restricting the movement of her spine would give her relief. She did subsequently report relief and in December 2002 Dr. Roy offered her the option of having fusion surgery. On January 16, 2003, Dr. Roy operated on plaintiff's low back to decompress and fuse the L4-5 and L5-S1 interspaces. Following the surgery, plaintiff made a temporary improvement but then suffered a recurrence of symptoms. Dr. Roy saw plaintiff on a regular basis until May 31, 2005. In June 2004, plaintiff reported a decrease in leg pain and in November 2004, Dr. Roy indicated improvement in back and left leg pain and that plaintiff was taking very little medication. At her last visit with Dr. Roy on May 31, 2005, plaintiff complained that she is no better since having the surgery.
10. Plaintiff testified that following her injury at work, she was unable to work on October 15, 2001 due to her back pain. After returning to work on October 16, 2001, she was sent home from her job due to her severe pain. Plaintiff testified that she has been unable to return to her job since October 17, 2001, due to her back injury, as she remains in too much pain to work. *Page 8 
11. Following her compensable injury in October 2001, plaintiff has not sought employment.
12. In addition to treatment by Dr. Roy for her injured back, plaintiff was also treated by Pro Med-Salisbury, Catherine Shue (functional capacity evaluation), Stewart Physical Therapy, Dr. James Hancock, Dr. Adam Flowers, Pathways Rehabilitation, Total Motion Physical Therapy, Bost Chiropractic, Jeter-Furr Chiropractic, and Dr. Mason.
13. On August 5, 2004, plaintiff underwent a Functional Capacity Evaluation.
14. In his deposition taken on October 7, 2005, Dr. Roy testified that plaintiff was at maximum medical improvement as of May 31, 2005. He also testified at his October 2005 deposition that based on his examinations and the Functional Capacity Evaluation, he estimated that plaintiff had a permanent partial disability rating of 36%-40% of the back and permanent restrictions of no sitting or standing over 15 minutes without changing positions, no squatting, no bending, no pushing, pulling, or lifting below the waist level, and no lifting more than 10 to 20 pounds on a frequent basis. He felt that because of her injured back she was totally disabled from her previous job from December 11, 2001, through the last time he saw her on May 31, 2005. There is no indication in the medical records that Dr. Roy expressed to plaintiff his opinion that she was at maximum medical improvement, that she had permanent work restrictions, or that she was capable of returning to work as of May 31, 2005 until his deposition on October 7, 2005.
15. Dr Roy rendered an opinion that plaintiff likely had a pre-existing back condition at the time of her work-related injury, and that more likely than not, plaintiff's work-related incident was a trigger exacerbating any back condition that she had prior to that incident. Dr. Roy further testified in his depositions that he assumed the leg pain was related to the back *Page 9 
because he had no other diagnosis to work from. Dr. Roy further assumed plaintiff's hip pain was a reflection of her back pain although he never specifically treated her for her hip.
16. Based upon the greater weight of the evidence, the Full Commission finds plaintiff's hip and left leg injuries are not causally related to the October 10, 2001 injury by accident.
17. Dr. Roy responded to inquiries from PMA Disability from December 2003 until May 31, 2005 that plaintiff was disabled. Dr. Roy explained in his deposition that "[he did not] think she had a job at this point and [he] felt that . . . unless someone was going to give her a job [within her] restrictions, that she probably was not going to find any gainful employment." Additionally, Dr. Roy explained that he put "disabled" on the forms because he had no job description or offered position to rely upon in considering whether plaintiff was capable of performing that work and that he may have put a different response had he been able to review a job position to determine whether it fit within her restrictions, but since he had none, she was disabled. Dr. Roy's opinion that plaintiff was disabled was based on his belief that plaintiff would not return to work unless the job was within her restrictions and was not based on an opinion that plaintiff was medically incapable of all employment.
18. Dr. Roy indicated that from the time he first saw plaintiff until her last appointment on May 31, 2005, he had not released plaintiff to return to work. Dr. Roy testified that plaintiff was capable of returning to light or sedentary duty work and could perform an office type job such as receptionist or office assistant. Dr. Roy also opined that it would be appropriate for him to review job descriptions to determine whether the offered work was within plaintiff's restrictions. He also noted that plaintiff might benefit from vocational rehabilitation *Page 10 
and that her capacity for work might be increased through participation in a work hardening program.
19. Dr. Roy referred plaintiff to Stewart Physical Therapy from October 2001 to May 2002 regarding her back injury. Dr. Mason also referred plaintiff to Stewart Physical Therapy for treatment of her back from October 2001 through December 2001.
20. In May 2002, Dr. Roy referred plaintiff to Dr. James Hancock at Northeast Medical Center for pain treatment related to her back injury.
21. Dr. Roy referred plaintiff to Dr. Adam Flowers at Northeast Medical Center for evaluation and treatment of her hip pain and left leg pain.
22. Plaintiff was referred to Pathways Rehabilitation for a spine management program relating to back injury.
23. Dr. Roy referred plaintiff to Total Motion Physical Therapy in May 2002 because she had not progressed from her back surgery.
24. Dr. Roy referred plaintiff to Dr. Bost of Bost Chiropractic for treatment of her compensable injury in 2002 before her surgery.
25. Plaintiff treated at Jeter-Furr Chiropractic Clinic in 2003. The treatment plaintiff received there in 2003 was related to her back injury.
26. Dr. Roy referred plaintiff to Catherine Shue to have the functional capacity evaluation in August 2004.
27. The greater weight of the evidence establishes that the medical care plaintiff received from Pro Med-Salisbury, Dr. Mason, Dr. Roy, Stewart Physical Therapy, Dr. James Hancock, Dr. Adam Flowers, Pathways Rehabilitation, Total Motion Physical Therapy, Bost *Page 11 
Chiropractic, Jeter-Furr Chiropractic, and Catherine Shue were causally related to plaintiff's work injuries and were obtained in an effort to effect a cure, lessen disability or provide relief.
28. From the transcript of the first hearing before Deputy Commissioner Morgan Chapman, defendant-employer's Human Resources Manager, Pam Cordts, testified that defendant-employer took a deduction from plaintiff's pay checks to help defendant-employer pay the premium to "a carrier" for plaintiff's short-term and long-term disability policies. Plaintiff's pay-stub of August 24, 2001, shows that $2.60 was deducted from plaintiff's paycheck for "Disability Insu". Hartford Disability received premium payments from plaintiff and defendant-employer for the short-term and long-term disability premiums.
29. The greater weight of the evidence establishes that plaintiff was sent home by the employer-defendant on October 16, 2001, was written out of work on October 18, 2001 by Dr. Mason.
30. The greater weight of the evidence establishes that plaintiff was at maximum medical improvement as of May 31, 2005 and that plaintiff can perform light or sedentary work in accordance with the restrictions assigned by Dr. Roy as set out above.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On or about October 10, 2001, plaintiff sustained a compensable injury as the result of a specific traumatic incident that aggravated her pre-existing back condition. N.C. Gen. Stat. § 97-2(6). *Page 12 
2. Plaintiff must prove that the specific traumatic incident was a causal factor of her injuries to her left leg and hip by a preponderance of the evidence. Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750
(2003). Plaintiff has failed to carry the burden of proving by competent evidence that a causal relationship existed between the work-related accident and her left leg and hip pain. Holley v. ACTS, Inc.,supra.
3. Plaintiff bears the burden of proof by the greater weight of the evidence to establish the extent of her disability within the meaning of the Act. Sims v. Charmes/Arby's Roast Beef, 142 N.C. App. 154,542 S.E.2d 277 (2001).
4. Plaintiff has the burden of proving disability which is defined as a loss of wage earning capacity. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, supra. When a plaintiff meets her burden of showing disability, the burden then shifts to defendant to produce evidence that suitable jobs are *Page 13 
available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
5. Plaintiff was totally disabled from her compensable specific traumatic incident from October 16, 2001, and continuing to May 31, 2005. N.C. Gen. Stat. § 97-2(9), Crane v. Berry's Clean-Up,169 N.C. App. 323, 610 S.E.2d 464 (2005). Plaintiff's treating physician, Dr. Roy, opined in his deposition that plaintiff was capable of working within specific restrictions as of May 31, 2005, however, his medical records do not reflect that he made plaintiff aware of his opinion at either the May 31, 2005 medical visit or anytime thereafter until his deposition in October 2005. For this reason, plaintiff has to some extent reasonably relied on her belief that she remained incapable of work in any employment.
6. Plaintiff is entitled to receive disability compensation in the amount of $363.00 per week from October 16, 2001, and continuing to May 31, 2005, to be paid in a lump sum subject to the attorney's fee approved below. N.C. Gen. Stat. § 97-29. Defendants shall pay interest at eight percent per year from September 16, 2003, when the case was first heard by Deputy Commissioner Chapman, as provided by law. N.C. Gen. Stat. § 97-86.2.
7. Because plaintiff made contributions to the short-term and long-term disability policies, defendants are not entitled to a credit for short-term and long-term disability payments pursuant to N.C. Gen. Stat. §§ 97-42; 97-42, Cox v. City of Winston-Salem, 157 N.C. App. 228,578 S.E.2d 669 (2003) and Cox v. City of Winston-Salem,171 N.C. App. 112, 613 S.E.2d 746 (2005).
8. Defendants are required to provide plaintiff with reasonably necessary medical treatment related to her compensable back injury by accident that tends to effect a cure, provide relief, or lessen the period of disability. This shall include vocational rehabilitation and a work *Page 14 
hardening program as recommended by Dr. Roy and plaintiff shall be obligated to make a good faith effort to participate in any reasonable vocational rehabilitation or work hardening program. N.C. Gen. Stat. §§ 97-2(19), 97-25, and 97-25.1.
 * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation in the amount of $363.00 per week from October 16, 2001, and continuing to May 31, 2005. Defendants shall also pay interest at eight percent per year from September 16, 2003, when the case was first heard by Deputy Commissioner Chapman, to be paid in full to plaintiff as provided by law and not subject to an attorney's fee. N.C. Gen. Stat. § 97-86.2. This amount shall be paid in a lump sum subject to the attorney's fee approved below. N.C. Gen. Stat. § 97-29.
2. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: 25% of the lump sum due plaintiff under paragraph 1 of this Award shall be deducted from that sum and paid directly to plaintiff's counsel excluding any interest paid under paragraph 1 of this Award.
3. Defendants shall pay all medical expenses incurred or to be incurred resulting from plaintiff's compensable back injury so long as it tends to affect a cure and give relief or lessen plaintiff's disability. Defendants are responsible for plaintiff's medical bills related to her compensable injuries to Pro Med-Salisbury, Dr. William Mason, Dr. Ranjan Roy, Catherine Shue, Stewart Physical Therapy, Dr. James Hancock, Dr. Adam Flowers, Pathways *Page 15 
Rehabilitation, Total Motion Physical Therapy, Bost Chiropractic and Jeter-Furr Chiropractic. This shall include vocational rehabilitation and a work hardening program as recommended by Dr. Roy.
4. In that the record contains insufficient evidence concerning the extent of plaintiff's disability, if any, after May 31, 2005, this issue is RESERVED for future determination. The parties may hereafter enter into an Agreement, stipulate to the extent of continuing disability, or either party may present additional evidence to this panel of the Full Commission on this issue.
5. Defendants shall pay the costs.
This 10th day of March 2007.
S/_________________
DIANNE C. SELLERS
COMMISSIONER
CONCURRING:
S/_________________
BERNADINE S. BALLANCE
COMMISSIONER
NOT AVAILABLE FOR SIGNATURE:
THOMAS J. BOLCH
 COMMISSIONER *Page 1