RONALD C. COX, Employee, Plaintiff v. CITY OF WINSTON-SALEM, Employer, SELF INSURED, Defendant

No. COA04-1037

(Filed 21 June 2005)

**1. Workers' Compensation— credit—disability payments— made while claim pending**

While an employer who pays benefits while contesting the claim may be entitled to a credit against the subsequently determined claim, it has not been held that an employer is necessarily entitled to a credit for payments received by an injured employee pursuant to a program partially funded by the employee. Here, there was no abuse of discretion in the Industrial Commission's decision to deny a city a credit for disability payments made to a city worker from the Local Government Employees' Retirement System (LGERS).

**2. Workers' Compensation— disability calculation—longevity payment**

There was evidence to support the Industrial Commission's calculation of the average weekly wage for a disability plaintiff

COX v. CITY OF WINSTON-SALEM

[171 N.C. App. 112 (2005)]

where the calculation included a longevity payment that plaintiff received in the last year before his injury but which was not guaranteed.

### 3. Workers' Compensation— appeal—attorney fees—discretion of Commission

The Industrial Commission did not err by denying attorney fees to a workers' compensation plaintiff where the case had been appealed and remanded. Although N.C.G.S. § 97-88 allows the Commission to order payment of attorney fees to the plaintiff for an insurer's unsuccessful appeal, the plain language of the statute and the cases decided under it establish that the decision to award attorney fees is in the discretion of the Commission.

Appeal by plaintiff and defendant from opinion and award filed 5 April 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 March 2005.

*Robert A. Lauver for plaintiff appellant-appellee.*

*Wilson & Iseman, L.L.P., by S. Ranchor Harris, III, for defendant appellant-appellee.*

McCULLOUGH, Judge.

On 31 August 1998, plaintiff Ronald C. Cox fell into an open manhole and injured his shoulder while working as a wastewater pump mechanic for defendant City of Winston Salem. This injury exacerbated problems related to a preexisting tumor in Cox's right sternoclavicular joint. After his treating physicians advised plaintiff to remain out of work indefinitely, plaintiff began drawing long-term disability retirement from the Local Governmental Employees' Retirement System (LGERS).

In an opinion and award entered 10 September 2001, the North Carolina Industrial Commission awarded Cox temporary total disability benefits, granted the City a partial credit for Cox's LGERS' disability retirement payments, and denied Cox's request for attorney's fees. Cox filed a motion for reconsideration with respect to whether the City should receive a credit for the LGERS' disability payments; the Commission denied this motion. On an appeal by both parties, this Court affirmed the award of temporary total disability benefits, but remanded with instructions that the Commission, *inter alia*: (1) make findings to clarify how it determined Cox's average weekly

wage for the purpose of determining his compensation rate; (2) hear additional evidence and determine whether the City is entitled to a credit for LGERS' disability payments to Cox in light of new information presented with Cox's motion for reconsideration, and (3) reconsider whether Cox is entitled to attorney's fees in light of its conclusion on the credit issue. *Cox v. City of Winston-Salem,* 157 N.C. App. 228, 238-39, 578 S.E.2d 669, 677 (2003).

On remand, the Commission received additional testimony concerning the LGERS' disability fund and entered an opinion and award on 5 April 2004 in which it adjusted Cox's average weekly wage and provided an explanation of its calculations, denied the City credit for LGERS' disability retirement payments to Cox, and again denied Cox's request for attorney's fees. From the 5 April 2004 opinion and award, both parties now appeal.

## THE CITY'S APPEAL

### I.

**[1]** We first address the City's appeal. In its first argument, the City contends that the competent evidence of record does not support the denial of a credit for the LGERS' disability payments made to Cox. We do not agree.

The standard of review for an opinion and award of the North Carolina Industrial Commission is "(1) whether any competent evidence in the record supports the Commission's findings of fact, and (2) whether such findings of fact support the Commission's conclusions of law." *Creel v. Town of Dover,* 126 N.C. App. 547, 552, 486 S.E.2d 478, 480 (1997). "The Commission's findings of fact are conclusive on appeal if supported by competent evidence, notwithstanding evidence that might support a contrary finding." *Hobbs v. Clean Control Corp.,* 154 N.C. App. 433, 435, 571 S.E.2d 860, 862 (2002). "This Court reviews the Commission's conclusions of law *de novo.*" *Deseth v. LensCrafters, Inc.,* 160 N.C. App. 180, 184, 585 S.E.2d 264, 267 (2003).

With respect to the granting of a credit, the Workers' Compensation Act provides the following guidance:

Payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this Article were not due and payable when made, may, subject to the approval of the Commission be deducted from the

amount to be paid as compensation. Provided, that in the case of disability such deductions shall be made by shortening the period during which compensation must be paid, and not by reducing the amount of the weekly payment. Unless otherwise provided by the plan, when payments are made to an injured employee pursuant to an employer-funded salary continuation, disability or other income replacement plan, the deduction shall be calculated from payments made by the employer in each week during which compensation was due and payable, without any carry-forward or carry-back of credit for amounts paid in excess of the compensation rate in any given week.

N.C. Gen. Stat. § 97-42 (2003). Pursuant to the statute, "[t]he decision of whether to grant a credit is within the sound discretion of the Commission." *Shockley v. Cairn Studios Ltd.*, 149 N.C. App. 961, 966, 563 S.E.2d 207, 211 (2002), *disc. review denied*, 356 N.C. 678, 577 S.E.2d 888 (2003). Therefore, this Court will not disturb the Commission's grant or denial of a credit to the employer on appeal in the absence of an abuse of discretion. *Id.*

Our Supreme Court has held that, if an employer contests a worker's compensation claim, but nevertheless pays the employee wage-replacement benefits which are fully funded by the employer and are not due and payable to the employee, then the employer "should not be penalized by being denied full credit for the amount paid as against the amount which [is] subsequently determined to be due the employee under workers' compensation." *Foster v. Western-Electric Co.*, 320 N.C. 113, 117, 357 S.E.2d 670, 673 (1987); *see also Lowe v. BE&K Construction Co.*, 121 N.C. App. 570, 576, 468 S.E.2d 396, 399 (1996) (holding that the Commission erred by denying employer a credit where employer contested the claim but provided the employee with three months of full salary, followed by partial salary for the remaining time out of work). The failure to award such a credit constitutes an abuse of discretion by the Commission. *Thomas v. B.F. Goodrich*, 144 N.C. App. 312, 319 n.2, 550 S.E.2d 193, 197 n.2, *disc. review denied*, 354 N.C. 228, 555 S.E.2d 276 (2001). However, neither the Supreme Court nor this Court has held that an employer is necessarily entitled to a credit against a worker's compensation award for payments received by an injured employee pursuant to a benefits program that has been partially funded by the employee. *See Foster*, 320 N.C. at 117 n.1, 357 S.E.2d at 673 n.1 ("We express no opinion as to whether payments made to a claimant under a plan to which the claimant contributed are within the purview of

N.C.G.S. § 97-42."); *Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 605, 532 S.E.2d 207, 214 (2000) ("The competent evidence in the record does not indicate that the employee contributed to this disability plan. Accordingly, we conclude that the [employer] is entitled to a credit for the disability benefits.").

In the instant case, it is undisputed that Cox was required to contribute six percent of his pay to receive benefits under LGERS. LGERS is administered in accordance with the North Carolina General Statutes, which permit a disabled employee with five or more years of creditable service to "be retired . . . on a disability retirement allowance." N.C. Gen. Stat. § 128-27(c) (2003).

> Upon retirement for disability . . . , a member [employee] shall receive a service retirement allowance if he has qualified for an unreduced service retirement allowance; otherwise the allowance shall be equal to a service retirement allowance calculated on the member's average final compensation prior to his disability retirement and the creditable service he would have had had he continued in service until the earliest date on which he would have qualified for an unreduced service retirement allowance.

N.C. Gen. Stat. § 128-27(d4) (2003). The term "retirement allowance" is statutorily defined to include both employer and employee contributions into the retirement system. N.C. Gen. Stat. § 128-21(20), (3), (15) (2003).

The City presented the Commission with deposition testimony from Clark Case, its financial system and employee accounting manager. Case testified that he had developed an "acid test" to determine whether the City or its employees were paying for LGERS' disability retirement benefits. For the purpose of this test, Case considered the impact of no one taking disability retirement. According to Case, if this happened, employees would still be required to contribute six percent of their pay to fund their service retirement, but the City's contribution amount would be greatly reduced because it would no longer have to pay for disability. Case further posited that, if all employees took disability retirement, the employee contribution into the retirement system would remain six percent of their pay, but the City's required contribution would be greatly increased. Case also opined that, because Cox was eligible to request a refund of his contributions plus four percent interest, he "didn't contribute anything" to pay for his disability benefits.

Cox presented the deposition of the Deputy Director of the State Retirement System, J. Marshall Barnes, III, who testified that

the benefits provided by the system, both service retirement and disability, are funded in part by the employer and funded in part by the employee. . . . The employer contributions for . . . all of the employers participating in the system, and again remember it's a multi-employer plan or actually lumped into one fund which is the Pension Accumulation Fund. So all the employer monies go into the Pension Accumulation Fund. The employee contributions go into the Annuity Savings Fund. And we actually keep individual records of the employee contributions. We do not keep individual records of the employer contributions. Pensions are paid out of the Pension Accumulation Fund, whether it be a disability or service, it's paid from the Pension Accumulation Fund. When a person retires, the amount of money their contributions and interest are credited to their account and the Annuity Savings Fund [comprised of employee contributions] is actually transferred from that fund to the Pension Accumulation Fund. Again from which all pensions are paid.

Thus, Barnes opined that Cox's disability benefits were not entirely funded by the City.

In its 5 April 2004 opinion and award, the Commission made the following finding of fact:

[A]fter considering the additional depositions of Mr. Barnes and Mr. Case, the Full Commission finds that the disability retirement allowance benefits that were paid to plaintiff beginning in October 1999 through the Local Governmental Employees' Retirement System (a defined benefit plan), were not fully funded by defendant-employer, as the program is a joint contributory program whereby the employee is required to contribute six percent of pay for the benefits as his cost.

The Commission concluded that the City "is not entitled to a credit for benefits paid . . . pursuant to a disability retirement plan to which the defendant-employer and employee jointly contributed."

Barnes' testimony provides competent record evidence to support the Commission's finding of fact, and this finding supports the Commission's conclusion of law. Moreover, on the facts of the instant case, we discern no abuse of discretion in the Commission's decision

to deny the City a credit for disability retirement payments made to Cox. This assignment of error is overruled.

## II.

[2] In its second argument on appeal, the City contends that on remand the Commission erroneously determined Cox's average weekly wage and, therefore, his weekly compensation. We do not agree.

"[W]here the incapacity for work resulting from [a compensable] injury is total, the employer shall pay or cause to be paid . . . to the injured employee during such total disability a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of his average weekly wages . . . ." N.C. Gen. Stat. § 97-29 (2003). The term "average weekly wages" is defined as

> the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . ; but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted.

N.C. Gen. Stat. § 97-2(5) (2003).

In the instant case, it is not disputed that, in the year immediately preceding his injury, Cox earned $28,295.09 and was also paid a longevity bonus of $600.29 and an overtime adjustment for longevity of $57.64. At the hearing before the Commission, the City contended that the longevity payments were not guaranteed and could not be considered as part of Cox's wages. The Commission made the following finding of fact:

> [Cox]'s correct average weekly wage is $570.95 and the compensation rate is $380.65. These figures are determined by taking plaintiff's total earnings of $28,295.09, together with the longevity bonus of $600.29 and the overtime adjustment for longevity of $57.64 for a total of $28,953.02. This total gross earnings amount is then divided by 50.71 (52 weeks less 1.29 weeks, a period of lost time exceeding seven consecutive days).

This finding is supported by competent evidence in the record and must be affirmed. This assignment of error is overruled.

## COX'S APPEAL

**[3]** In his only argument on appeal, Cox contends that the Commission erred by denying his motion for attorney's fees. We do not agree.

Cox's motion for attorney's fees was made pursuant to N.C. Gen. Stat. § 97-88 (2003), which provides that

> [i]f the Industrial Commission at a hearing on review or any court before which any proceedings are brought on appeal under this Article, shall find that such hearing or proceedings were brought by the insurer and the Commission or court by its decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, the Commission or court may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as a part of the bill of costs.

This provision "permits the Full Commission or an appellate court to award fees and costs based on an insurer's unsuccessful appeal." *Rackley v. Coastal Painting*, 153 N.C. App. 469, 475, 570 S.E.2d 121, 125 (2002). It does not require that the appeal be brought without reasonable ground for plaintiff to be entitled to attorney's fees. *Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 53, 464 S.E.2d 481 (1995), *disc. review denied*, 343 N.C. 516, 472 S.E.2d 26 (1996). This Court reviews the Commission's ruling on a motion for attorney's fees for an abuse of discretion. *Taylor v. J.P. Stevens Co.*, 307 N.C. 392, 394, 298 S.E.2d 681, 683 (1983).

In the instant case, the Commission's 10 September 2001 opinion and award denied Cox's motion for attorney's fees pursuant to N.C. Gen. Stat. § 97-88 because the City, which is self-insured, "was successful on appeal with regard to entitlement to a credit [for disability retirement payments to Cox]." In its 5 April 2004 opinion and award, which was entered on remand from this Court, the Commission determined that the City is not entitled to a credit and again concluded that Cox "is not entitled to attorney['s] fees pursuant to N.C. Gen. Stat. § 97-88." Cox argues that the Commission could not deny his motion for attorney's fees because the Commission "revers[ed] its previous error on the credit issue, and thereby eliminat[ed] its previously expressed ground for the denial of the motion for attor-

ney's fees." This position is contrary to the plain language of N.C. Gen. Stat. § 97-88 and the cases decided under it, all of which establish that the decision to award attorney's fees is consigned to the **discretion** of the Commission.

After careful review, we are unpersuaded that the Commission abused its discretion by denying Cox's motion for attorney's fees. This assignment of error is overruled.

Affirmed.

Judges HUNTER and LEVINSON concur.