* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner, the transcript of evidence from the March 26, 2007 hearing before the Deputy Commissioner, the June 12, 2007 deposition testimony of Dr. Krakauer and the briefs and argument before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission modifies the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearings before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly brought before the Industrial Commission, are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the Commission has jurisdiction over the parties and the subject matter, and an employer-employee relationship existed between plaintiff and defendant-employer.
2. All parties have been correctly designated and there are no questions as to misjoinder or nonjoinder of the parties.
3. Defendant-employer has designated ESIS as its Third Party Administrator, the defendant-employer is properly on the risk, and there are no questions as to insurance coverage of the parties.
4. The following items were stipulated into evidence:
 a. Plaintiff's medical records collectively paginated 4-105;
 b. Industrial Commission Forms collectively paginated 94-105;
 c. Plaintiff's payroll records marked as stipulated exhibit 2;
 d. Plaintiff's medical records from Raleigh Orthopaedics, dated February 15, 2006 through the present;
 e. Plaintiff's employment records from December 1, 2005 through the present;
 * * * * * * * * * * * ISSUES *Page 3 
Whether plaintiff is entitled to benefits pursuant to N.C. Gen. Stat. §§ 97-29 and/or 97-30 after September 13, 2005?
 Defendant's Issue
Whether plaintiff is entitled to compensation related to her shoulder condition?
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 55 years of age. She began working for defendant-employer in 2001 in Virginia as a "floater" bank teller. Her main task was to assist customers with bank transactions. This task involved using a 10-key pad with her right hand, typing on a computer keyboard, and counting money manually. Plaintiff stopped working for defendant-employer in Virginia in 2002.
2. In 2003, plaintiff's family moved to Youngsville, North Carolina and plaintiff began work at defendant's Wakefield branch in Raleigh. Plaintiff was assigned the position of drive-through teller. This position included the duties of a regular bank teller and also included handling the tube canisters used in the pneumatic transfer system.
3. In her position as a drive-through teller, the average number of transactions plaintiff completed per month in 2004 was 3,278. As a drive-through teller, plaintiff worked either at a pneumatic tube station or at a window-drawer station. Plaintiff normally worked all non-holiday weekdays approximately from 9 a.m. to 5 p.m., Monday through Thursday and from 9 a.m. to 6 p.m. on Fridays. Plaintiff worked an approximate average of 177 hours per month in 2004. *Page 4 
4. Each transaction included the tasks of keyboarding with her right hand, using a 10-key pad with her right hand, running transaction slips through a printer for date and time verification and dropping the transaction slip in the appropriate slot. In addition, when plaintiff was working at a station using the pneumatic tube, during each transaction, plaintiff had to reach overhead twice (once to retrieve and once to replace the canister) and then use a twisting motion to open the canister's top. When plaintiff was at a station using a window-drawer, during each transaction, plaintiff had to push a button to open and close the drawer.
5. Plaintiff testified that the job was fast-paced and depending on the time of day and day of the week was very busy. Plaintiff also testified that she is right-hand dominant and did most of her work with her right hand.
6. Plaintiff began to feel right arm and right elbow pain in mid-December 2004.
7. On January 17, 2005, plaintiff went to her family physician, Dr. J.C. Rounds, complaining of continuing right arm and elbow pain. Dr. Rounds referred plaintiff to Raleigh Orthopaedic Clinic, P.A.
8. Plaintiff reported her injuries to her supervisor on February 9, 2005. Defendant approved an evaluation at Concentra Medical Center that resulted in a diagnosis of acromioclavicular strain and lateral epicondylitis. Defendant approved five sessions of physical therapy, which plaintiff attended.
9. On February 22, 2005, defendant filed a Form 61 Denial of Workers' Compensation Claim.
10. On March 1, 2005, on Dr. Rounds' referral to Raleigh Orthopaedic Clinic, P.A., plaintiff presented to Dr. Joel D. Krakauer, an orthopedic hand specialist. Dr. Krakauer opined that plaintiff had been unable to work since February 8, 2005. *Page 5 
11. Dr. Krakauer treated plaintiff for lateral epicondylitis and carpal tunnel syndrome with physical therapy, medications, and injections. He then released plaintiff to return to work on a limited basis for four hours per day starting May 16, 2005.
12. Pursuant to Dr. Krakauer's restrictions, plaintiff worked on a limited part-time basis from May 16, 2005 through July 24, 2005, earning a total of $2,190.00, which calculates to an average weekly wage of $215.99. However, plaintiff's symptoms did not resolve and Dr. Krakauer performed a surgical carpal tunnel release on July 25, 2005. On September 13, 2005, Dr. Krakauer released plaintiff to return to full duty work "in reference to her hands" and referred her to his partner, Dr. Jeffrey K. Kobs, an orthopedic specialist, for her continuing shoulder pain complaints.
13. On September 19, 2005, Dr. Kobs initially noted tenderness and positive impingement. He recommended range of motion exercises and anti-inflammatory medication. At this visit, Dr. Kobs released plaintiff to return to work as follows: "as pertains to right shoulder only: Patient may work with restriction of: no overhead lifting, at least until next appt. 10/10/05." In his deposition testimony on December 8, 2005, Dr. Kobs opined that he would have no problem with plaintiff returning to work as a bank teller.
14. Dr. Kobs continued to treat plaintiff and on October 31, 2005, he gave plaintiff an injection that provided 80% to 90% relief. When questioned at his deposition regarding a causal connection between plaintiff's work and her shoulder symptoms, Dr. Kobs opined to a reasonable degree of medical certainty that most likely plaintiff's job with defendant did not cause her shoulder impingement. Dr. Kobs did not have an opinion regarding whether plaintiff's job with defendant significantly aggravated her shoulder impingement. *Page 6 
15. Based on the greater weight of the medical evidence, the Full Commission finds that there is insufficient medical evidence to establish that plaintiff's work duties with defendant caused or significantly aggravated her shoulder condition.
16. On May 3, 2007, Dr. Krakauer performed a lateral epicondylitis release on plaintiff's elbow since plaintiff had failed to respond fully to a series of cortisone injections and had persistent pain. As of the date of Dr. Krakauer's deposition on June 12, 2007, Dr. Krakauer had not released plaintiff to return to any work due to her recovery from the surgery.
17. Dr. Krakauer testified to a reasonable degree of medical certainty and the Full Commission finds that plaintiff's job with defendant as a drive-through teller placed her at an increased risk of developing right lateral epicondylitis and right carpal tunnel syndrome as compared to members of the general public not so employed. Dr. Krakauer also testified to a reasonable degree of medical certainty and the Full Commission finds that there was a causal relationship between plaintiff's job for defendant as a drive-through teller and plaintiff's development of right lateral epicondylitis and right carpal tunnel syndrome.
18. Dr. Steven B. Sanford, an orthopedic surgeon performed a medical record review in this claim, without meeting or examining plaintiff and without viewing the job analysis video prepared by defendant. Dr. Sanford opined that plaintiff's job with defendant did not cause her lateral epicondylitis or carpal tunnel syndrome.
19. The Full Commission finds that Dr. Krakauer, as plaintiff's treating physician, having viewed the job analysis video and having performed her surgery is in the best position to give an expert medical opinion regarding the cause of plaintiff's right lateral epicondylitis and right carpal tunnel syndrome. Dr. Krakauer's opinion is therefore given greater weight than that of Dr. Sanford. *Page 7 
20. At the supplemental hearing before the Deputy Commissioner on March 26, 2007, plaintiff testified that she returned to work as a part-time teller with defendant in November 2005. Plaintiff stated that she was not aware of the availability of any full-time positions since her return to work in November 2005 that would not have required working in a drive-thru line. She further testified that she did not seek full-time work until shortly before March 26, 2007 hearing, sixteen months after her return to part-time work in November 2005.
21. Ms. Lynn Jenkins, a recruiting consultant for defendant testified at the March 26, 2007 supplemental hearing before the Deputy Commissioner that there had been full-time teller positions available when plaintiff returned to work in November 2005 but plaintiff's first choice was to work part-time. Ms. Jenkins further testified that there have been approximately 135 full-time teller positions available since November 2005 that did not require working at the drive-thru line. Ms. Jenkins testified that these positions were available at local branches, including the branch were plaintiff had been employed.
22. At the supplemental hearing before the Deputy Commissioner on March 26, 2007, Ms. Donna Marie Watkins, a service leader for the Cary and Raleigh market for defendant testified that based on her conversations with plaintiff, she thought plaintiff only wanted to work on a part-time basis. Ms. Watkins stated that she had a conversation with plaintiff approximately four months earlier in which plaintiff expressed an interest in a service banker position and asked if those positions were ever part-time.
23. Based on the greater weight of the evidence, the Full Commission finds that plaintiff was capable of working a full-time teller position without drive-thru line responsibilities as of September 13, 2005, when Dr. Krakauer released her to return to work and that these *Page 8 
positions were available with defendant; however, plaintiff chose to continue to work on a part-time basis.
24. Plaintiff has received some benefits from a short-term disability plan through defendant. Plaintiff made contributions to this plan, called a Personal Accident Insurance plan.
25. The two Form 22s filed in this case reflect an average weekly wage of $508.48 in the 52 weeks preceding plaintiff's injury. This yields a workers' compensation rate of $339.01.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has shown by the greater weight of the evidence that she contracted or developed the occupational disease of right lateral epicondylitis and right carpal tunnel syndrome on or about mid-December 2004, which was due to causes and conditions characteristic of and peculiar to her employment with defendant and which was not an ordinary disease of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53(13); Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979).
2. As a result of the compensable occupational disease, plaintiff is entitled to temporary total disability compensation at a rate of $339.01 per week for the periods from February 8, 2005 through May 15, 2005, when Dr. Krakauer released plaintiff to light duty, working four hours per day; from July 25, 2005, when plaintiff had carpal tunnel release surgery through September 13, 2005, when Dr. Krakauer released plaintiff to work; and from May 3, 2007, the date Dr. Krakauer performed a lateral epicondylitis release on plaintiff and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29. *Page 9 
3. As a result of the compensable occupational disease, plaintiff is entitled to weekly temporary partial disability benefits for the period from May 16, 2005 through July 24, 2005 at a rate of two-thirds of the difference between $508.48 and $215.99. N.C. Gen. Stat. § 97-30.
4. Plaintiff is entitled to have defendant provide all medical treatment incurred or to be incurred for her right lateral epicondylitis and right carpal tunnel syndrome for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Defendant is not entitled to any credit for payments made to plaintiff by the short-term disability plan to which she contributed. N.C. Gen. Stat. § 97-42; Cox v. City of Winston-Salem, ___ N.C.App. ___,613 S.E.2d 746 (2005).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff temporary total disability compensation at the rate of $339.01 per week for the periods from February 8, 2005 through May 15, 2005, when Dr. Krakauer released plaintiff to light duty, working four hours per day; from July 25, 2005, when plaintiff had carpal tunnel release surgery through September 13, 2005, when Dr. Krakauer released plaintiff to work; and from May 3, 2007, the date Dr. Krakauer performed an epicondylitis release on plaintiff and continuing until further Order of the Commission. Those payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below. *Page 10 
2. Subject to a reasonable attorney's fee herein approved, defendants shall pay plaintiff weekly temporary partial disability benefits for the period from May 16, 2005 through July 24, 2005 at a rate of two-thirds of the difference between $508.48 and $215.99. Those payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
3. Defendant shall pay all medical expenses incurred or to be incurred in the future which are reasonably related to plaintiff's right lateral epicondylitis and right carpal tunnel syndrome for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability.
4. A reasonable attorney's fee of twenty-five percent of the compensation awarded in paragraphs 1 and 2 is hereby approved for plaintiff's counsel. The accrued portion of this fee shall be deducted from the accrued benefits and paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
5. Defendant is not entitled to any credit for payments made to plaintiff by the short-term disability plan to which she contributed.
5. Defendant shall pay the costs.
This the ___ day of July 2007.
S/________________________ PAMELA T. YOUNG, COMMISSIONER
 CONCURRING: *Page 11 
 S/________________________ BERNADINE S. BALLANCE COMMISSIONER
 S/________________________ BUCK LATTIMORE CHAIRMAN