***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in the Pretrial Agreement as: *Page 2 
 STIPULATIONS
1. An employment relationship existed between plaintiff and defendant-employer at the time of the incident.
2. The parties are subject to the terms of the Workers' Compensation Act, and defendant-employer employed the requisite number of employees to be bound under the provisions of the Act at the time of the incident.
3. Defendant-employer was properly insured at the time of the incident by defendant-employer and ACE USA/ESIS.
4. The alleged date of injury is July 10, 2007.
5. The following exhibits were stipulated into evidence:
 a. Stipulated Exhibit 1, consisting of the pretrial agreement, Industrial Commission forms and filings, and plaintiff's medical records, paginated 1-154.
 b. Stipulated Exhibit 2, consisting of Form 22 and plaintiff's wage information for the year prior to July 10, 2007, paginated 1-5.
 *********** ISSUES
Whether plaintiff sustained a compensable workplace injury to his neck on July 10, 2007 and, if so, to what workers' compensation benefits and/or medical treatment is plaintiff entitled.
 ***********
Based upon the foregoing stipulations and evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT *Page 3 
1. Plaintiff was 44 years old at the time of the hearing before the Deputy Commissioner. Plaintiff possesses a GED. Plaintiff worked for defendant-employer's glass plant in Wilson, North Carolina for 14 years. The last 10 years plaintiff was a forklift driver. Plaintiff's work duties included carrying and dumping loads of liquid glass with a forklift.
2. On July 10, 2007, plaintiff was using his forklift to dump loads of liquid glass and water in certain areas. While plaintiff was away at lunch, a co-worker placed a quantity of "blow off" bottles in a certain area and did not notify plaintiff. When plaintiff returned from lunch, he dumped the material he was moving unknowingly on top of these bottles, creating a steam explosion. As plaintiff attempted to escape the forklift to avoid the burning steam, his foot became caught in the forklift, causing plaintiff to twist his body and fall out of the forklift to the concrete floor. Plaintiff landed on his left arm. Plaintiff also sustained burns on his arms, face, and neck as a result of this accident.
3. On July 10, 2007, plaintiff received medical care from physician's assistant Mark Eldridge at Immediate Care in Wilson. The medical record from this visit reads plaintiff "immediately got out of the forklift and probably fell down onto his elbow and was complaining of a little bit of discomfort and stiffness to his left elbow." The July 19, 2007, medical record from Wilson Immediate Care indicates plaintiff had suffered a "non displaced left radial head fracture" to his left arm. Plaintiff did not complain of neck pain to Mr. Eldridge. Immediate Care subsequently referred plaintiff to Dr. Lewis Martin of Wilson Orthopaedic for treatment of his left extremity problems.
4. Plaintiff filed a Form 18 dated July 16, 2007. In the "body part involved" section plaintiff wrote "right arm, neck, face, lips, left arm." *Page 4 
5. On December 11, 2007, defendants filed a Form 60 admitting the compensability of the injury by accident. Defendants accepted the burns and injury to plaintiff's left arm, but denied that plaintiff injured his neck in the accident. Defendants paid temporary total disability compensation and medical compensation for plaintiff's injury.
6. In September 2007 plaintiff returned to light duty work at a reduced capacity and received temporary partial disability compensation from defendants.
7. Dr. Martin treated plaintiff conservatively over the following several months. Plaintiff began to develop ulnar nerve symptoms. Dr. Martin stated that the results from an EMG showed that the symptoms were not originating in the elbow, but were most likely coming from plaintiff's neck. Dr. Martin's medical record of April 2, 2008 indicates that plaintiff reported neck pain and trouble working due to "pain and numbness in the arm." This medical record continued stating "[w]ith the neck, I think it is reasonable to have him see a spine physician." On April 2, 2008, Dr. Martin documented work restrictions given to plaintiff indicating light work and no lifting over 5 pounds with either arm. Dr. Martin planned to see plaintiff after the functional capacity evaluation was completed. Dr. Martin believed that plaintiff's neck condition was exacerbated by the July 10, 2007 injury.
8. On March 20, 2008, Dr. George Edwards, an orthopedist, examined plaintiff. Plaintiff testified that initially Dr. Edwards asked plaintiff what was wrong with his neck. Plaintiff was "floored" by the question and told Dr. Edwards that he had no neck pain. Dr. Edwards believed there was some nerve damage and referred plaintiff to a spine specialist. At his deposition Dr. Edwards indicated that plaintiff complained of radiating pain and difficulty turning his head from side to side when operating machinery or vehicles. Regarding the etiology of this pain, Dr. Edwards stated, "So I didn't see anything flagrant in terms of any neurological deficit, *Page 5 
except for a little tingling in the thumb, which probably goes along with the C5-6 ruptured disk in the neck."
9. On June 16, 2008, plaintiff saw Dr. Kurt Voos at the Center for Scoliosis Spinal Surgery. The medical record describes the work accident and indicates plaintiff's neck pain began after the accident. Dr. Voos noted that plaintiff has axial neck pain that radiates into the left elbow.
10. On July 14, 2008, plaintiff returned to Dr. Voos. Plaintiff had an MRI of his cervical spine that showed evidence of a disk osteophyte complex at C4-C5 with left neural foraminal narrowing. Dr. Voos eventually recommended surgery and took plaintiff out of work on March 9, 2009. Plaintiff indicated he wanted to proceed with surgery at this point and would contact his workplace about approval from the workers' compensation carrier. Dr. Voos' note indicates that he saw this as an aggravation of an underlying condition.
11. Defendants paid plaintiff's medical bills initially. On January 2, 2009, plaintiff filed a Form 33 due to defendants' denial of the compensability of plaintiff's cervical condition and refusal to pay plaintiff's temporary total disability related to the cervical condition.
12. Dr. Voos' deposition was taken regarding the causation of plaintiff's cervical condition. Dr. Voos indicated that an incident such as plaintiff's fall on July 10, 2007, would lead to an exacerbation of plaintiff's cervical condition. Dr. Voos expressed his opinion and the Full Commission finds that the injury by accident aggravated a pre-existing, underlying condition in plaintiff's neck. Dr. Voos explained that patients can "have no pain and just present with weakness but it's from the cervical spine. Or you can have patients that have a combination of both. The vast majority will come in and have no neck pain and would just have arm pain." Dr. Voos agreed that it was possible that plaintiff had no neck pain and just had arm pain. *Page 6 
13. Mark Eldridge, PA-C, indicated that plaintiff did not complain of cervical pain during the approximately four months that he treated plaintiff.
14. Prior to July 10, 2007, plaintiff had not experienced neck or arm symptoms.
15. The circumstances of plaintiff's workplace incident of July 10, 2007 constituted a compensable injury by accident to his neck that arose out of and in the course of his employment with defendant-employer.
16. The greater weight of the credible medical evidence of record shows that, as a result of plaintiff's neck injury, along with his physical and vocational limitations, plaintiff has been totally disabled and unable to earn any wages in any employment since March 7, 2009 and continuing.
17. Plaintiff has received some benefits from a short-term disability plan through defendants. Plaintiff made contributions to this plan.
18. Using the first method set forth in N.C. Gen. Stat. § 97-2(5) and according to the Form 22 and wage documents submitted, plaintiff earned $56,568.96 during the 52 week period prior to the injury. This amount divided by 52, results in an average weekly wage of $1,087.86. Plaintiff's average weekly wage of $1,087.86 yields a weekly workers' compensation rate of $725.28.
19. This matter was appealed to the Full Commission by defendants from an Opinion and Award awarding benefits and results in an affirmation of that award.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 7 
1. In order to establish a compensable injury to the neck, plaintiff must prove that the disabling injury arose out of and in the course of the employment and was the direct result of either an accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town of Valdese,92 N.C. App. 222, 224, 374 S.E.2d 116, 118 (1988), disc. reviewdenied, 324 N.C. 337, 378 S.E.2d 799 (1989).
2. Furthermore, our courts have held that an injury is compensable if it is caused by an accident that arises out of employment, materially accelerates or aggravates a pre-existing condition, and proximately contributes to disability. N.C. Gen. Stat. § 97-2(6); Brown v. Family Dollar Distrib.Ctr., 129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
3. On July 10, 2007, as plaintiff attempted to escape from his forklift to avoid a steam explosion, plaintiff fell to the concrete floor and sustained an injury by accident to his neck arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6); Fish v. Steelcase, Inc.,116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert.denied, 339 N.C. 737, 449 S.E.2d 233 (1995). This compensable injury caused plaintiff's neck condition or materially accelerated or aggravated a pre-existing condition. N.C. Gen. Stat. § 97-2(6); Brown v. Family Dollar Distrib.Ctr., 129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
4. Defendants admitted the compensability of plaintiff's injury by accident on July 10, 2007 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff.Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied,353 N.C. 729, 550 S.E.2d 782 (2001).
5. In order to meet the burden of proving disability, plaintiff can prove disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a *Page 8 
consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.Russell v. Lowe's Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). The medical evidence in this case shows that as the result of the compensable injury of July 10, 2007, plaintiff has been physically incapable of work in any employment since March 7, 2009.
6. Regarding plaintiff's average weekly wage, the applicable method of calculation is the first method under N.C. Gen. Stat. § 97-2(5). Plaintiff's average weekly wage of $1,087.86 yields an appropriate weekly workers' compensation rate of $725.28. N.C. Gen. Stat. §§ 97-2(5),-29.
7. As the result of plaintiff's compensable injury by accident on July 10, 2007, plaintiff is entitled to have defendants pay ongoing total disability compensation at the rate of $725.28 per week from March 7, 2009 and continuing until such time as he returns to suitable employment or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
8. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by the July 10, 2007 compensable neck injury when bills for the same have been approved pursuant to Industrial Commission procedures. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1. *Page 9 
9. Defendants are not entitled to any credit for payments made to plaintiff by the short-term disability plan to which he contributed. N.C. Gen. Stat. § 97-42; Cox v. City of Winston-Salem,171 N.C.App. 112, 613 S.E.2d 746 (2005).
10. Plaintiff is entitled to payment by defendants for the attorney's fees associated with this appeal to the Full Commission pursuant to N.C. Gen Stat. § 97-88.
 **********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff, subject to the attorney's fee approved below, total disability compensation at a rate of $725.28 per week for the period from March 7, 2009 and continuing until plaintiff returns to work or further Order of the Commission.
2. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, defendants shall pay all medical expenses incurred or to be incurred as a result of the compensable neck injury sustained by plaintiff on July 10, 2007, when bills for the same have been approved pursuant to Industrial Commission procedures.
3.A reasonable attorney's fee in the amount of 25% of the compensation awarded herein is approved plaintiff's counsel. From the amounts having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check payable to plaintiff thereafter.
4. Plaintiff's counsel is hereby awarded attorney's fees associated with this appeal to the Full Commission, pursuant to N.C. Gen. Stat. § 97-88. Plaintiff's counsel shall submit to the Full Commission an affidavit or itemized statement setting forth the time spent preparing for, *Page 10 
attending, and arguing this appeal to the Full Commission. Upon receipt of this affidavit, the Full Commission shall issue an Order directing defendants to pay an additional attorney's fee directly to plaintiff's counsel.
5. Defendants shall pay the costs due the Commission.
This the 22nd day of July, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALANCE COMMISSIONER
 S/___________________ CHRISTOPHER S. SCOTT COMMISSIONER *Page 1